153 Cal.App.2d Supp. 897 (1957)
JOHN G. OPPENHEIMER, Plaintiff and Appellant,
v.
SUNKIST GROWERS, INC. (a Corporation), Defendant and Appellant.
California Court of Appeals. 
Aug. 20, 1957.
 John G. Oppenheimer, in pro. per., for Plaintiff and Appellant.
 Farrand, Fisher & Farrand for Defendant and Appellant. [153 Cal.App.2d Supp. 898]
 SWAIN, J.
 The plaintiff voluntarily and without prior notice quit his oral employment with the defendant at 8 a. m. on June 8, 1956. The wages then admittedly earned were not paid him until June 14. Because the amount then paid did not include the penalties that had accrued, the trial court concluded that the "wages" continued, and gave plaintiff judgment on the theory that he was entitled to be paid for 20 days. The plaintiff appealed from that portion of the judgment that limited his basic recovery to 20 days. The defendant appealed from that portion of the judgment that allowed recovery in excess of $36 (three times the daily wage) and as we agree that the penalties ceased when the earned wages were paid, we are modifying the judgment, by reducing it.
 Section 202 of the Labor Code declares that if an employee, not employed under a written contract, for a definite period, quits his job, without prior warning, "his wages shall become due and payable not later than seventy-two hours thereafter." Section 203 of the same code provides: "If an employer wilfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than thirty days. No employee who secretes or absents himself to avoid payment to him, or who refuses to receive the payment when fully tendered to him, including any penalty then accrued under this section, shall be entitled to any benefit under this section for the time during which he so avoids payment."
 "Suit may be filed for such penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise."
 [1] On June 14, 1956, plaintiff was entitled not only to his earned wages then due but also to penalty wages for three days at the rate of $12 per day. (Defendant admits that penalty wages in the sum of $36 for that period were and are due so we shall not concern ourselves with the problem of making deductions from that sum for income tax or social security.) The plaintiff claims that inasmuch as the penalty wages then due were not paid when the earned wages were paid, the penalty wages continued for 30 days from the due date. We do not agree. The purpose of the above sections of the Labor Code is to compel the prompt payment of earned [153 Cal.App.2d Supp. 899] wages. Such a statute is to be strictly construed and it should not be extended to provide for penalty wages after the earned wages have been paid.
 "Statutes of the character under discussion are intended to compel the employer to pay promptly the regularly earned wages of an employee who was either discharged or who quit of his own accord; they must be given a reasonable, although necessarily strict, construction, and their literal enforcement, it has been held, may yield to strong equitable defenses." (56 C.J.S. 761.)
 The leading case of St. Louis etc. R. Co. v. Bryant (1909), 92 Ark. 425 [122 S.W. 996], construed a statute similar in all respects to our own. At page 997 the court said: "The plain object and purpose of this statute is to secure for the employe the prompt payment of the wages due by visiting upon the [employer] a penalty until the same are paid. The primary intent of this statute is not to secure the payment of a penalty, but the payment of wages; and, by the provision of the statute, it is stipulated that the penalty shall continue until the wages are paid. When the wages are paid, therefore, the penalty ceases. ... We are therefore of the opinion that the amount of the penalty ceases to run on the 18th day of December, 1907, when the defendant tendered to the plaintiffs the full amount of their wages, with interest; and that it did not also have to tender the amount of the penalty which had accrued to that day to stop the continuance of the accumulation of the penalty. The plaintiffs, upon said tender being made or upon the acceptance of that amount for wages only, had still the right to recover the amount of the penalty which had accrued to that date and now have that right; but not to recover any further amount for penalty."
 "A tender of the wages due at the time of the discharge, if properly made and in the proper amount, terminates the further accumulation of penalty, but it does not preclude the employee from recovering the penalty already accrued. A tender is effective for this purpose, even though it does not include the accrued penalty, or the interest, where the amount is so small as to come within the maxim, De minimis non curat lex, ..." 56 C.J.S. 764.
 Plaintiff relies on two unpublished cases decided by this department, Dalzell v. Evans (1948), Civ. A. 6846, and Lieberman v. Hassen Hospital, Inc. (1950), Civ. A. 7394. They support his contention, but these decisions do not mention or apparently consider the very persuasive authorities quoted [153 Cal.App.2d Supp. 900] above and are contrary to what we hold the law to be. We expressly disapprove them insofar as they conflict with what we hold hereinabove.
 The judgment is modified by reducing the principal amount thereof from $198.20 to $36 and adding thereto interest in the sum of $1.89. As thus modified, the judgment is affirmed. The appellant Sunkist Growers, Inc., a corporation, is awarded its costs of appeal.
 Kauffman, J., concurred.
 BISHOP, P. J.
 I concur. I do not find it possible to determine with conviction just what the Legislature meant, but section 203, while referring to the penalties as "wages," does distinguish between the penalty wages and those earned, although not by the use of those words, and I am now of the opinion that we should prefer the interpretation that does not clearly authorize the greater penalty.