[Civ. No. 46636. First Dist., Div. Three. Oct. 29, 1981.]

EILEEN JANE BARNHILL, Plaintiff and Respondent, v.
ROBERT SAUNDERS & COMPANY, Defendant and Appellant.

COUNSEL

Christopher R. Inama and Pomeroy, Inama & Bartholomew for Defendant and Appellant.

Patrick W. Henning, John C. Herbert and Charles E. Finster for Plaintiff and Respondent.

OPINION

**SCOTT, Acting P. J.**—The principal question presented here is whether an employer has the right to set off an employee's debt against wages due the employee upon the employee's discharge. We also consider

whether an employer who attempted to exercise such a setoff was properly subjected to penalties for wilful nonpayment of wages pursuant to Labor Code section 203.

Respondent Eileen Barnhill was employed by appellant Robert Saunders & Company as a bookkeeper from March 3, 1975, until December 12, 1977. In October 1977 she executed a promissory note in favor of appellant in the amount of $587.50 at 10 percent interest. On its face, the note states "To be paid by payroll deduction or on demand." Subsequently, the parties orally agreed that appellant would deduct $37.50 from Barnhill's wages every two weeks.

Barnhill was discharged on December 12, 1977, for reasons not relevant herein. On that date, the balance due on the note was $475 plus interest, and Barnhill was owed two weeks wages, or $475. When she went to pick up her check, she was given a stub with a net zero balance indicating various deductions including a $442.46 setoff against the balance owing on the note.

She complained to the Labor Commissioner. After a hearing, an order in her favor was issued. Appellant sought review of that order in superior court. After a trial de novo (see Lab. Code, § 98) judgment was entered in favor of respondent in the sum of $475 for wages, plus $1,096.25 in penalties pursuant to Labor Code section 203.

A. *The Setoff*

Labor Code section 201 provides in relevant part: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

█  Appellant contends that notwithstanding section 201, it was entitled to set off respondent's debt to it against the wages due her.

█  The right of setoff has been described as "the established principle in equity that either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference." (*Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 362 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266].) The right depends not on statutes authorizing setoff, but on general princi-

ples of equity. (*Id.*, at p. 363.) However, a creditor's right to setoff is not absolute, and may be restricted by judicial limitations imposed to uphold a state policy protecting debtors. (*Id.*, at p. 367.)

In *Kruger* a bank's depositor was delinquent in paying her Master Charge bill. At issue was whether the bank could exercise its equitable right of setoff against her checking account, when all monies in that account came from state disability insurance and unemployment compensation, funds exempt from attachment or execution. The court held the deposits immune from setoff, reasoning that to permit setoff would frustrate the Legislature's objectives in providing those benefits and protecting them from seizure by creditors. In support of its conclusion, the court looked to the law of other states, in particular *Finance Acceptance Company* v. *Breaux* (1966) 160 Colo. 510 [419 P.2d 955], a Colorado Supreme Court decision which holds that an employer cannot set off the employee's obligations on promissory notes against exempt wages due him. The court cited with approval the Colorado court's statement that the majority view is that the right to exemption from *attachment, execution or garnishment* will be respected and protected without regard to the right of offset, and that the creditor will not be allowed to defeat the exemption with a demand against the debtor's claim, even though such demand would otherwise be good as a counterclaim or setoff. (*Kruger, supra,* 11 Cal.3d at p. 369.)

Anticipating the question in this case, the *Kruger* court added the following footnote: "Several California cases have permitted employers to set off debts owing them by employees against the employee's wages. (*McDaniel* v. *City etc. of San Francisco* (1968) 259 Cal.App.2d 356, 365 [66 Cal.Rptr. 384]; *Patterson* v. *Henderson T. & R. Co.* (1931) 112 Cal.App. 48 [296 P. 304]; see *Division of Labor Law Enforcement* v. *Barnes* (1962) 205 Cal.App.2d 337, 350 [23 Cal.Rptr. 55]; *People* v. *Porter* (1930) 107 Cal.App. Supp. 782 [288 P. 22].) Although one half of wages is exempt from attachment and execution (see Code Civ. Proc., § 690.6), these cases do not discuss the relationship of the state policy providing for this exemption to the employer's assertion of setoff, nor recognize that the majority view in other jurisdictions is that exempt wages are not subject to setoff. (See *Finance Acceptance Company* v. *Breaux* (1966) 160 Colo. 510 . . . .) We do not, therefore, regard these decisions as establishing a California rule permitting assertion of setoffs against exempt property." (*Id.*, at p. 369, fn. 25.)

We note that the *Kruger* court's statement that "... one half of wages is exempt from attachment and execution (see Code Civ. Proc., § 690.6), ..." was not accurate. The version of section 690.6 then in effect actually distinguished between attachment and execution. While at least one-half of wages was exempt from execution, *all* earnings of a debtor received for his personal services were exempt from levy of attachment.[1] This absolute exemption now appears in section 487.020, subdivision (c), of the state's attachment law. (Code Civ. Proc., § 487.010 et seq.; Stats. 1974, ch. 1516, § 9, operative Jan. 1, 1977.) Section 487.020, subdivision (c), exempts from attachment "[a]ll compensation paid or payable to a defendant employee by an employer for personal services performed by such employee whether denominated as wages, salary, commission, bonus, or otherwise." Unquestionably, when respondent was discharged, all the wages due her were immune from attachment.[2]

The policy underlying the state's wage exemption statutes is to insure that regardless of the debtor's improvidence, the debtor and his or her family will retain enough money to maintain a basic standard of living, so that the debtor may have a fair chance to remain a productive member of the community. (*Perfection Paint Products* v. *Johnson* (1958) 164 Cal.App.2d 739, 741 [330 P.2d 829].) Moreover, fundamental due process considerations underlie the prejudgment attachment exemption. Permitting appellant to reach respondent's wages by setoff would let it accomplish what neither it nor any other creditor could do by attachment and would defeat the legislative policy underlying that exemption. We conclude that an employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee.

---

[1]Code of Civil Procedure section 690.6 then provided in relevant part: "(a) Except as provided in Section 11489 of the Welfare and Institutions Code, all of the earnings of the debtor received for his personal services shall be exempt from levy of attachment without filing a claim for exemption as provided in Section 690.50. [¶] (b) One-half or such greater portion as is allowed by statute of the United States, of the earnings of the debtor received for his personal services rendered at any time within 30 days next preceding the date of a withholding by the employer under Section 682.3, shall be exempt from execution without filing a claim for exemption as provided in Section 690.50." (Stats. 1972, ch. 43, § 1, p. 61.)

[2]Furthermore, more than one-half of her wages were exempt from execution by a judgment creditor. Seventy-five percent of her wages were automatically exempt from execution. While a judgment creditor could have garnished up to 25 percent of her wages, even that amount might have been returned to her had she sought an additional exemption on the basis that all her wages were necessary for her use or that of her family. (*Raigoza* v. *Sperl* (1973) 34 Cal.App.3d 560, 563 [110 Cal.Rptr. 296].)

## B. *The Penalty*

The trial court awarded respondent $1,096.25 in "waiting time penalties" pursuant to Labor Code section 203 ($43.85 per day for 25 days). That section provides in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5 and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days."

■ Appellant contends that penalties should not have been imposed, because it had a good faith defense to respondent's wage claim.

The purpose of section 203 is to compel the prompt payment of earned wages; the section is to be given a reasonable but strict construction. (*Oppenheimer* v. *Sunkist Growers* (1957) 153 Cal.App.2d Supp. 897, 898-899 [315 P.2d 116].) In *Manford* v. *Singh* (1919) 40 Cal. App. 700, 702-703 [181 P. 844], the court said with respect to a predecessor of section 203: "[T]he statute should have reasonable construction. Its design is to protect the employee and to promote the welfare of the community.... But it is to be observed that the most formidable objection to the statute derives its principal force from the supposed hardships of a hypothetical case wherein the employer is without fault or the employee is guilty of culpable conduct. The statute is not subject to such reproach. It contemplates that the penalty shall be enforced against an employer who is at fault. It must be shown that he owes the debt and refuses to pay it. He is not denied any legal defense to the validity of the claim."[3]

However, to be at fault within the meaning of the statute, the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due. As used in section 203, "willful" merely means that the employer intentionally failed or refused to perform an act *which was required to be done.*

---

[3]We note that in a number of jurisdictions, an honest dispute between the parties, or uncertainty on the part of the employer, as to the amount of unpaid wages due, has been held to constitute a valid defense to an action for statutory penalties for nonpayment. (Annot. (1963) 90 A.L.R.2d 606, 632.) Here, however, there is no dispute as to the amount of unpaid wages due.

(*Davis* v. *Morris* (1940) 37 Cal.App.2d 269, 274 [99 P.2d 345].) (Italics added.)

In *Davis*, judgment was rendered against the members of a mining partnership for the mine superintendent's unpaid wages, plus a section 203 penalty. On appeal, the partners argued that their failure to pay was not wilful since, in good faith, they believed the superintendent was a partner who contributed his services rather than an employee. Therefore, they reasoned, the penalty was not warranted.

The court noted that the evidence as to the superintendent's employment status was in conflict, but found substantial evidence that the superintendent was not a partner, *and* that the partners were not in good faith in claiming that he was a partner. (*Davis, supra*, 37 Cal. App.2d at p. 274.) In other words, the dispute before the trial court was one of fact, and the evidence supported that court's determination that the employers had no factual basis for their refusal to pay.

In contrast, in this case the essential facts are undisputed. Respondent was owed wages by appellant, and she owed appellant a debt. The question before the trial court was one of law: did appellant have a right to set off the debt against the wages? There was no contention that appellant did not entertain a good faith belief that it was entitled to such a setoff. Although we have concluded that the trial court correctly determined that appellant had no such right, at the time the state of the law in that regard was not clear. In *Oppenheimer* v. *Sunkist Growers, supra*, 153 Cal.App.2d Supp. at page 899, in a discussion of Labor Code sections 201, 202, and 203, the court stated: "'Statutes of the character under discussion are intended to compel the employer to pay promptly the regularly earned wages of an employee who was either discharged or who quit of his own accord; they must be given a reasonable, although necessarily strict, construction, and *their literal enforcement, it has been held, may yield to strong equitable defenses.'* (56 C.J.S. 761.)" (Italics added.) The doctrine of setoff is an equitable principle. (See *Kruger, supra*, 11 Cal.3d at p. 360.) Moreover, several Courts of Appeal had expressed the view that setoffs against employees' wages were proper, and the *Kruger* court itself seemed to suggest that an employer had at least some right of setoff. (See *Kruger*, fn. discussed *ante*, at p. 5.) We conclude that given that uncertainty, appellant should not be penalized for believing that setoff was proper and payment of wages not required. Accordingly, appellant's attempt to exercise a right to setoff was not wilful nonpayment of wages within the

meaning of Labor Code section 203, and the imposition of penalties was inappropriate.

Judgment is reversed with respect to the imposition of penalties, and the court directed to enter judgment denying penalties. In all other respects, judgment is affirmed. Each party to bear its own costs.

Feinberg, J., and Barry-Deal, J., concurred.