**Daniel E. PUGEL, an individual, Plaintiff–Appellant,**

v.

**Morgan STANLEY, Defendant–Appellee.**

No. 04–57154.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2007.

Filed Feb. 26, 2007.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Lloyd C. Ownbey, Jr., Esq., Law Offices of Lloyd C. Ownbey, Jr., Pasadena, CA, for Plaintiff–Appellant.

Jennifer L. Nutter, James A. Goodman, Esq., Epstein, Becker & Green, Los Angeles, CA, for Defendant–Appellee.

Before: PREGERSON, W. FLETCHER, and BERZON, Circuit Judges.

MEMORANDUM *

Daniel Pugel filed suit in state court alleging that his former employer, Morgan

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Stanley, violated: (1) California's Fair Employment and Housing Act ("FEHA"), CAL. GOV'T CODE §§ 12900–12996, by discharging Pugel and approximately 1,000 other financial advisors in an age-discriminatory manner; (2) section 201 of California's Labor Code, CAL. LAB. CODE § 201, by failing to pay Pugel his earned commission immediately upon discharge; and (3) section 17200 of California's Business and Professions Code, CAL. BUS. & PROF. CODE § 17200, by virtue of having violated the aforementioned state statutes. On appeal, Pugel challenges the district court's decision to grant summary judgment to Morgan Stanley.

We review a district court's grant of summary judgment *de novo*. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). Employing that standard, we affirm the district court in part and reverse the district court in part.

1. The district court properly granted Morgan Stanley summary judgment with respect to Pugel's age discrimination claim under FEHA. While Pugel advanced both a disparate impact and disparate treatment theory of liability, he failed to establish a prima facie case of discrimination under either theory. *See Carter v. CB Richard Ellis, Inc.*, 122 Cal.App.4th 1313, 1325, 19 Cal.Rptr.3d 519 (2005) (placing the initial burden of establishing a prima facie case of disparate impact age discrimination on the plaintiff); *Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 354–55, 100 Cal. Rptr.2d 352, 8 P.3d 1089 (2000) (same, in the disparate treatment age discrimination context).

To make out a prima facie case of discrimination under a disparate impact theory of liability, a plaintiff must, among other things, "prove causation; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the [employment] practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir.1990) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)).[1] These disparities "must be sufficiently substantial that they raise ... an inference of causation." *Id.*

■ Pugel has offered no such statistical evidence. Instead, he asks the court to simply infer that because Morgan Stanley insulated the least experienced financial advisors from potential discharge, its layoff plan disproportionately impacted older financial advisors, like himself. Similarly, Pugel asks us to conclude that because the layoff plan used selection criteria that arguably benefitted less experienced financial advisors, the plan necessarily had an adverse impact on older financial advisors. He has provided no meaningful data, however, that actually connects the two variables at play, age and tenure. At best, Pugel has proferred a few pieces of anecdotal data—pointing, for example, to the fact that he was 51 at the time of his discharge,[2] as well as to the fact that in his

---

1. Although Pugel brought suit under a state law, Ninth Circuit cases like *Rose*, which involve claims brought under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et. seq.*, are nevertheless relevant to resolution of his claim. *See Guz*, 24 Cal.4th at 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (explaining that "[b]ecause of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes").

2. Pugel's own career, of course, contradicts the inference he wants the court to draw, given that he was hired as a financial advisor at Morgan Stanley when he was 47.

own office, another older financial advisor was also laid off, while two younger financial advisors, who were allegedly less productive than Pugel, were retained. Because a plaintiff cannot make out a prima facie case of discrimination under a disparate impact theory of liability by presenting "no evidence ... of anyone other than himself" or by relying on a "bare inference of discriminatory impact," *see Sakellar v. Lockheed Missiles & Space Co.,* 765 F.2d 1453, 1456–57 (9th Cir.1985), Pugel's age-based disparate impact claim fails.

■ Pugel's age discrimination claim also fails when considered under a disparate treatment theory of liability. To make out a prima facie case of age-based disparate treatment, in cases involving a "general reduction in workforce," Pugel must show "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir.2000) (quoting *Rose,* 902 F.2d at 1421). Pugel, again, has failed to meet this initial burden.

Pugel primarily asks us to discern a discriminatory motive on Morgan Stanley's part from the fact that the company designed the layoff plan without using readily available demographic data to ensure that the plan did not disproportionately affect older financial advisors. This argument, however, assumes that the layoff plan did, in fact, have a disparate impact— a showing that, as we have explained, Pugel has not even come close to making.

Furthermore, while plaintiffs in other age-based disparate treatment cases have presented a wide variety of evidence in an effort to meet their prima facie burden— e.g., pointing to comments that were made during the course of being discharged, *see Pottenger v. Potlatch Corp.,* 329 F.3d 740, 747 (9th Cir.2003); *Coleman,* 232 F.3d at 1281; *Rose,* 902 F.2d at 1423; producing probable cause letters from the EEOC, *see Coleman,* 232 F.3d at 1281; or showing that the standard discharge procedures were not used when they were laid off, *see Palmer v. United States,* 794 F.2d 534, 537–38 (9th Cir.1986)—Pugel has offered no additional proof to suggest a discriminatory motive. As a result, the district court properly granted Morgan Stanley summary judgment with respect to Pugel's age-based disparate treatment claim.

■ **2.** The district court erred in granting Morgan Stanley summary judgment with respect to Pugel's claim that Morgan Stanley violated section 201 of the state's Labor Code when it failed to pay him his last commission check immediately upon discharge.

Under California law, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." CAL. LAB. CODE § 201(a). " 'Wages' includes all amounts" earned on a "commission basis." CAL. LAB. CODE § 200(a); *see also Reid v. Overland Machined Prods.,* 55 Cal.2d 203, 207–08, 10 Cal.Rptr. 819, 359 P.2d 251 (1961). Any employer who "willfully" violates section 201 must continue to pay the discharged employee his wages "until paid or until an action therefor is commenced," although "the wages shall not continue for more than 30 days." *See* CAL. LAB. CODE § 203.

The plain language of sections 201 and 203 make no exceptions for commission-based payments, and California courts have generally afforded employers little leeway in complying with these statutes. *See, e.g., Barnhill v. Robert Saunders & Co.,* 125 Cal.App.3d 1, 7, 177 Cal.Rptr. 803 (1981) ("The purpose of section 203 is to compel the prompt payment of earned wages; the section is to be given a reason-

able but strict construction."). While Morgan Stanley points to an opinion letter issued by the Division of Labor Standards Enforcement (DLSE) as evidence that the relevant state agency has injected some breathing room into these Labor Code provisions,[3] our own reading of the agency's guidance yields little support for Appellee's position. Specifically, the opinion letter states that:

> in cases where the commission *cannot be ascertained* until the happening of a condition subsequent, the imposition of penalties under Labor Code § 203 in the event of termination of employment (see Labor Code §§ 201 and 202) would not be appropriate. Those commissions which were *not reasonably ascertainable* would not be "due."

*See* State of California, Department of Industrial Relations, Division of Labor Standards Enforcement, Opinion Letter: Commission Payments (Dec. 9, 2002), *available at* http://www.dir.ca.gov/dlse/opinions/2002-12-09-2.pdf (emphases added).

Morgan Stanley produced no evidence to show why it could not comply with the relevant provision. Instead, the company produced only evidence showing that its general corporate practice was to wait until the end of the month to make such calculations. This evidence does not suffice to demonstrate that Pugel's commission *could not* have been reasonably ascertained in anticipation of his discharge, or sooner thereafter than it was.[4]

To be sure, Morgan Stanley presented evidence that end-of-month adjustments were at times necessary to reflect situations in which a client had prepaid a fee, because the financial advisor was entitled to receive the full commission for that payment only if he were still employed at the time when the fee would have actually been due. It presented no evidence, though, that Pugel's final commission was actually contingent on such a prepaid fee situation or any other, similar "condition subsequent."

The district court, therefore, erred in granting Morgan Stanley summary judgment on this claim.[5]

3. The district court granted Morgan Stanley summary judgment with respect to Pugel's third claim, concluding that because the alleged violation of section 17200 of the California Business and Professions Code was "based on the same facts as his age discrimination claims ... [it] fails for

---

3. While DLSE opinion letters do not have the force of law, California courts regularly refer to them for guidance in interpreting the state's labor code. *See Koehl v. Verio, Inc.,* 142 Cal.App.4th 1313, 1334 n. 7, 48 Cal. Rptr.3d 749 (2006) (explaining that DLSE "[a]dvisory opinions ... while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance") (citing *Bell v. Farmers Ins. Exch.,* 87 Cal.App.4th 805, 815, 105 Cal.Rptr.2d 59 (Ct.App.2001)) (internal quotations omitted).

4. In fact, Pugel did not receive his final commission check until December 13, 2002—nearly a month after his discharge and almost two weeks after the end of the month.

5. During argument, Morgan Stanley contended that, even if it violated section 201, it should not be penalized under section 203 because it did not act "willfully." *See* CAL. LAB. CODE § 203. "As used in section 203," though, " 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done." *See Barnhill,* 125 Cal.App.3d at 7–8, 177 Cal. Rptr. 803 (citing *Davis v. Morris,* 37 Cal. App.2d 269, 274, 99 P.2d 345 (1940)). "[T]he employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due." *Id.* at 7, 177 Cal.Rptr. 803. On the current record, Morgan Stanley's conduct qualifies under this definition of "willful."

the same reasons." In fact, Pugel's claim under section 17200 was based both on facts relevant to his FEHA claim as well as to his Labor Code claim. We therefore vacate the district court's grant of summary judgment to Morgan Stanley with respect to Pugel's section 17200 claim and remand the matter to the district court so that it may reconsider this claim in light of our partial reversal.

**AFFIRMED in part; REVERSED in part; REMANDED.**

Each party shall bear its own costs.