FILED

APR 24 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                                   )    BAP No. CC-16-1293-LKuF
                                         )
PAUL CHARLES ZEPPINICK,                  )    Bk. No. 1:14-bk-13168-VK
                                         )
                    Debtor.              )    Adv. No. 1:14-ap-01168-VK
_____  )
PAUL CHARLES ZEPPINICK,                  )
                                         )
                    Appellant,           )
                                         )
v.                                       )    **M E M O R A N D U M**[*]
                                         )
LUIS RAMIREZ,                            )
                                         )
                    Appellee.            )
_____  )

Argued and Submitted on March 23, 2017
at Pasadena, California

Filed - April 24, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

_____

Appearances:    Katherine Butts Warwick argued for Appellant Paul
                Charles Zeppinick; Michael John Hemming argued for
                Appellee Luis Ramirez.

_____

Before: LAFFERTY, KURTZ, and FARIS, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

In 2004, Appellee Luis Ramirez worked for Appellant Paul Zeppinick on home remodeling projects. On one of those projects, the home sustained damage after the plastic Ramirez placed on a damaged roof blew off in a storm. Thereafter, Zeppinick refused to pay Ramirez his wages, claiming an offset of $12,000-$14,000 for the damage. Ramirez filed a claim with the Labor Commissioner of the State of California seeking payment of his wages. The Labor Commissioner found in favor of Ramirez, finding that Ramirez was an employee and not an independent contractor and that Zeppinick should have known he had not right to offset any damages against an employee's wages. The Labor Commissioner awarded Ramirez $23,156.50. Zeppinick did not appeal the Labor Commissioner's decision, and a judgment was entered in the Superior Court (the "Judgment").

After Zeppinick filed his chapter 7[1] case, Ramirez filed an adversary proceeding seeking a declaration of nondischargeability of the sums due him under the Judgment. At trial, the bankruptcy court gave issue preclusive effect to the Labor Commissioner's findings and heard testimony from the parties. The bankruptcy court ruled in favor of Ramirez, finding the debt nondischargeable under § 523(a)(6). Zeppinick timely appealed.

We AFFIRM.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

Zeppinick is a California licensed general contractor with 50 years' experience as a laborer, salesperson, foreman, and general contractor. Prior to 2004, Zeppinick worked for a company named Thoughtful Builders as a superintendent and project manager doing home remodeling. During his employment with Thoughtful Builders he met Ramirez, who also worked for Thoughtful Builders, and the two worked on projects together. At some point in 2004 the owner of Thoughtful Builders fell ill, and Zeppinick took over management of the company's operations.

Around December 2004, Zeppinick asked Ramirez to work for him. They agreed that Ramirez would supervise projects and buy materials, subject to reimbursement by Zeppinick. Ramirez would be paid $25 per hour as compensation for his work. To be paid, Ramirez would submit a weekly work report summarizing the work he performed and detailing the number of hours he spent working and any materials he purchased out of pocket.

From the beginning of the parties' working relationship until September 2005, Zeppinick regularly paid Ramirez his wages and expense reimbursements; payments were made in cash. Zeppinick did not pay the employer's share of taxes, did not withhold the employee's share of taxes, and did not obtain workers' compensation insurance.

Around September 2005, Zeppinick was hired to repair the roof of a house belonging to Chris Bentley (the "Bentley

---

[2] In this factual recitation, we borrow heavily from the bankruptcy court's findings and conclusions.

Property"). During the course of this project, the Bentley Property was damaged when Ramirez covered the already damaged roof with plastic sheeting and left for the weekend; the plastic blew off in a storm, resulting in water damage to the home. Zeppinick testified that he had to pay to repair those damages. From September 2005 through November 2005, Zeppinick did not pay Ramirez his wages or reimburse Ramirez for his expenses. Zeppinick testified that he withheld the funds owed to Ramirez because Ramirez's work resulted in damage to the Bentley Property. In late November 2005, Ramirez's employment with Zeppinick was terminated.

On December 20, 2005, Ramirez filed a claim with the Labor Commissioner of the State of California. Ramirez alleged that he was owed (1) unpaid wages earned from September 15, 2005 to November 28, 2005, a total of $10,000; and (2) unreimbursed business expenses from July 16, 2005 to November 28, 2005, a total of $13,459.92. To support his claim, Ramirez submitted detailed documentation of wages and expenses he had incurred at the time Zeppinick refused to pay Ramirez.

On July 31, 2006, the Labor Commissioner held a hearing on the matter. Both Ramirez and Zeppinick appeared at the hearing. Zeppinick appeared without an attorney and without any documentary evidence. On September 6, 2006, the Labor Commissioner issued its decision in favor of Ramirez. In relevant part, the Labor Commissioner found:

> Plaintiff performed services as an employee not an independent contractor (sub-contractor).
>
> . . . .

-4-

> Plaintiff's wage claim contains a deduction of $4,000.00 for damages at one of the work sites.
>
> . . . .
>
> Defendant's position is that Plaintiff [is] a sub-contractor, employed the crew and at least some of the work sites were fixed price wage agreements. Defendant produced no written evidence whatsoever despite admitting the records were in fact maintained. Defendant's argument is really a setoff argument as Plaintiff's leaving early caused extensive water damage at the Chris Bentley work site . . . .
>
> Defendant is a licensed contractor and should know the basic labor laws including the presumption in his state that one who performs services for another is an employee. There was no explanation for the failure to produce records at the hearing. Plaintiff is awarded $9,000.00 in wages deducting the week not worked that caused the controversy between the parties. Plaintiff is awarded $12,495.14 based on effective evidence as produced at the hearing.
>
> Absent admissions and a conviction there is no demonstrated proof of employee wrong doing or gross negligence on the part of the Plaintiff in the record although the parties are in dispute as to when Plaintiff notified Defendant he would be off the job. Plaintiff did the work and Plaintiff incurred the expenses and he has to be paid and deducted $4,000.00 off the claim for the damages to Bentley's residence. A majority of the evidence favors Plaintiff in this matter and he is awarded what he claims subject to the modifications noted hereinabove.

The Labor Commissioner awarded Ramirez a total of $23,156.50 comprised of $9,000 in wages, $12,495.74 in reimbursable expenses, and $1,660.76 in interest pursuant to Cal. Lab. Code § 98.1. The Labor Commissioner's Order included the following notice of a right to appeal:

> The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court within ten (10) days of service of this document.

Zeppinick neither appealed nor sent payment. As a result, the

Judgment in the amount of $23,877.96 (including post-hearing interest and filing fee) was entered in favor of the Labor Commissioner and against Zeppinick; the Labor Commissioner subsequently assigned the Judgment to Ramirez.

Zeppinick filed a chapter 7 bankruptcy on June 29, 2014. Ramirez filed a timely adversary proceeding seeking a declaration of nondischargeability of the amounts owed to him pursuant to the Judgment. The matter was tried on August 30, 2016. As a result of amendments to the original complaint and a stipulation to dismiss the § 523(a)(2)(B) claim, the sole claim remaining for adjudication was under § 523(a)(6).

As of the trial date, Zeppinick had not paid any portion of the Judgment. At trial, the bankruptcy court gave issue preclusive effect to the Labor Commissioner's findings and also heard testimony from the parties. The bankruptcy court issued its ruling the following day, finding in favor of Ramirez on the § 523(a)(6) claim. The bankruptcy court entered judgment on September 30, 2016 declaring $47,206.56 nondischargeable under § 523(a)(6). Zeppinick timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court err in applying issue preclusion to the Labor Commissioner's findings?

Did the bankruptcy court err in entering judgment finding the debt Zeppinick owed to Ramirez to be nondischargeable under

-6-

§ 523(a)(6)?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's determination that issue preclusion was available. Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 461 (9th Cir. BAP 2015). If issue preclusion was available, we review the bankruptcy court's application of issue preclusion for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002). A finding that an injury is willful is a factual finding that is reviewed for clear error, see Gee v. Hammond (In re Gee), 173 B.R. 189, 192 (9th Cir. BAP 1994), as is a finding that an injury is malicious, Thiara v. Spycher Bros. (In re Thiara), 285 B.R. 420, 427 (9th Cir. BAP 2002). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (citation omitted). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous. Id. at 574. We are to

-7-

give "due regard to the trial court's opportunity to judge the witnesses' credibility." Civil Rule 52(a)(6) (incorporated via Rule 7052). We also give deference to inferences drawn by the trial court. Beech Aircraft Corp. v. United States, 51 F.3d 834, 838 (9th Cir. 1995).

## DISCUSSION

**A. The bankruptcy court did not err in applying issue preclusion to the Labor Commissioner's findings.**

Zeppinick contends that the bankruptcy court erred in giving issue preclusive effect to the Labor Commissioner's findings. In its findings and conclusions, the bankruptcy court stated: "The parties do not dispute the collateral estoppel effect of the Labor Commissioner's decision and the Judgment regarding the amount of unpaid wages and unreimbursed expenses owed to Plaintiff and as to the characterization of Plaintiff as an employee." In the bankruptcy court, Zeppinick's counsel did not expressly object to the application of issue preclusion to the Labor Commissioner's decision, but in the parties' Joint Pretrial Stipulation, they agreed that the issues of fact to be litigated included Ramirez's status as an employee of Zeppinick. However, at trial, the bankruptcy court cut off Zeppinick's counsel's questioning of Ramirez regarding facts relevant to whether Ramirez was an employee or an independent contractor, stating "there's no real point in arguing about being an independent contractor. It's already been determined at a hearing . . . in which the defendant participated." Although Zeppinick could have (and probably should have) explicitly raised and briefed the preclusion issue, on this record we are reluctant to conclude

-8-

that he waived any objection to the bankruptcy court's application of the doctrine. That said, we find no error by the bankruptcy court in applying issue preclusion to the Labor Commissioner's findings.

In applying issue preclusion to a state court judgment, the bankruptcy court must apply the forum state's law of issue preclusion. In re Plyam, 530 B.R at 462. In California, application of issue preclusion requires that: (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. Id. (citing Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990)).

Zeppinick does not contest the first, fourth or fifth elements, but implicitly argues that the second element – the "actually litigated" requirement – was not met here. He argues that there was an insufficient record to determine the issues litigated before the Labor Commissioner because no record of the hearing was introduced into evidence, citing Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996) ("a party [seeking the application of issue preclusion] must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action"). Zeppinick misconstrues Kelly: there is no **requirement** that the entire record of the underlying proceedings

-9-

be produced if the issues can be ascertained from the documents presented. See Johnson v. GlaxoSmithKline, Inc., 166 Cal. App. 4th 1497, 1513 n.9 (2008) (a court **may** refer to the entire record to determine the issues decided in the earlier case); In re Plyam, 530 B.R. at 470 (to the extent jury findings are clearly and solely based on the relevant elements, they may be sufficient for the application of issue preclusion). Here, the Labor Commissioner explicitly found that Ramirez was an employee and not an independent contractor, noting that Zeppinick had "produced no written evidence whatsoever despite admitting that records were in fact maintained" to support his contention that Ramirez was a subcontractor.

Zeppinick also cites Wehrli v. County of Orange, 175 F.3d 692 (9th Cir. 1999). In that case, the Ninth Circuit Court of Appeals reversed the district court's ruling that a state administrative ruling was preclusive in a federal court action under 42 U.S.C. § 1983. Id. at 695. However, in Wehrli, the Court of Appeals' holding was based on its conclusion that the appellant did not have an adequate opportunity to litigate the issues decided in the administrative ruling because the ruling was not subject to judicial review. Id. at 694. That is not the circumstance here. It is undisputed that the Judgment based on the Labor Commissioner's Order was appealable; Zeppinick's failure to avail himself of this remedy does not change the preclusive effect of the judgment. See id. ("If an adequate opportunity for review is available, a losing party cannot obstruct the preclusive use of the state administrative decision simply by foregoing her right to appeal.") (quoting Plaine v.

-10-

McCabe, 797 F.2d 713, 719 n.12 (9th Cir. 1986)).

In his reply brief, Zeppinick argues for the first time that he was not afforded due process before the Labor Commissioner because he was not served with the Superior Court judgment and thus had no opportunity to seek judicial review, again citing Wehrli, 175 F.3d at 694. However, we do not consider arguments raised for the first time in a reply brief. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000). In any event, this argument is baseless: Zeppinick does not dispute that he was served with the Labor Commissioner's Order, which informed him that the Order would become final in ten days unless a party exercised its right to appeal.

**B.    The bankruptcy court did not err in finding that Zeppinick's failure to pay Ramirez was willful and malicious.**

Section 523(a)(6) provides in relevant part: "[a] discharge under 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." The plaintiff bears the burden of proof on these elements by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991). The creditor must prove that the debtor's conduct in causing the injuries was **both** willful **and** malicious. In re Su, 290 F.3d at 1146-47.

Willfulness requires proof that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself. Id. at 1143 (citing Kawaauhau v. Geiger, 523 U.S. 57 (1998)). The debtor must act with a subjective motive to inflict

-11-

injury, or with a belief that injury is substantially certain to result from the conduct. Id. at 1146. And for conduct to be found malicious, the creditor must prove that the debtor: (1) committed a wrongful act; (2) that was done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse. Id. at 1146-47.

### 1. Zeppinick's conduct was willful.

The willful injury requirement is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010). The debtor is charged with the knowledge of the natural consequences of his actions. Id. Although this standard is subjective, the bankruptcy court need not take the debtor's word for his state of mind; rather, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." In re Su, 290 F.3d at 1146 n.6 (citation omitted).

Here, it is undisputed that Zeppinick breached the parties' oral employment agreement by willfully failing to pay Ramirez his wages. A breach of contract alone, even an intentional one, will not generally give rise to a nondischargeable debt. But "where an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th

-12-

Cir. 2001).  In California, "conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."  Id. at 1206 (quoting Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 515 (1994)).  And tort recovery for a bad faith breach of contract is permitted only when "a defendant's conduct violates a fundamental public policy of the state."  Id. (quoting Rattan v. United Servs. Auto. Assoc., 84 Cal. App. 4th 715, 722 (2000)).

The prompt payment of wages due an employee is a fundamental public policy in California.  Id. (quoting Gould v. Md. Sound Indus., Inc., 31 Cal. App. 4th 1137, 1147 (1995)).  In fact, the willful failure to pay wages is a misdemeanor under the California Labor Code:

> In addition to any other penalty imposed by this article, any person, or an agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:
>
> (a) Having the ability to pay, willfully refuses to pay wages due and payable after demand has been made.
>
> (b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due.

Cal. Lab. Code § 216.  Even where an employee owes a debt to his or her employer, the employer may not set off that debt against wages owed.  Cal. Lab. Code § 201;[3] Barnhill v. Robert Saunders &

---

[3] That statute provides in relevant part:

(continued...)

-13-

Co., 125 Cal. App. 3d 1, 6 (1981).

Relying on these authorities, the Ninth Circuit Court of Appeals in Jercich held that the debtor-employer engaged in tortious conduct meeting the willfulness requirement of § 523(a)(6) based on state court findings that the debtor knew he owed the wages, had the ability to pay the wages, and knew that injury to the plaintiff was substantially certain to occur if the wages were not paid but chose instead to use the money for his own personal benefit. In re Jercich, 238 F.3d at 1208-09.

Here, Zeppinick testified that he had the ability to pay Ramirez during the pertinent times but that he did not pay the wages because he asserted a right of setoff against Ramirez. The bankruptcy court did not make an explicit finding that Zeppinick knew that harm to Ramirez was substantially certain to occur from the nonpayment of wages. However, the court cited the rule that the debtor is charged with the knowledge of the natural consequences of his actions, In re Ormsby, 591 F.3d at 1206, and concluded that denying Ramirez "$9,000 in wages and reimbursement of $12,495.74 paid out of pocket when one makes $4,000 in gross wages per month is clearly injurious." Under Jercich, this finding is sufficient to support the conclusion that Zeppinick knew that harm to Ramirez was substantially certain if the wages were not paid.

Zeppinick argues that he had no subjective intent to harm

<hr>

³(...continued)
(a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . .

-14-

Ramirez but that he withheld the wages in the legitimate belief that he was entitled to an offset for the roof repairs. However, the bankruptcy court found not credible Zeppinick's testimony that he estimated the roof damage at between $12,000 and $14,000 – noting that had produced no documentary evidence to support that estimate – and concluded that Zeppinick apparently "exaggerated the amount of damage to the Bentley Property to support his argument regarding offset and not because of any legitimate basis." We must defer to the bankruptcy court's credibility determination and the inferences it drew from the evidence. See Civil Rule 52(a)(6); Beech Aircraft Corp., 51 F.3d at 838. In any event, it is implausible that Zeppinick would not have known that harm to Ramirez would result from the nonpayment of wages. We find no error in the bankruptcy court's finding that Zeppinick's conduct was willful.

### 2. The bankruptcy court did not err in finding that Zeppinick's conduct was malicious.

The bankruptcy court found that Zeppinick's conduct was malicious because his failure to pay Ramirez was an intentional wrongful act done without just cause or excuse that necessarily caused injury. The evidence supporting the bankruptcy court's willfulness finding also supports the finding of malice. As noted above, the intentional failure to pay wages is a misdemeanor under California law (an intentional wrongful act), which necessarily caused injury.

Additionally, the bankruptcy court did not err in finding that there was no just cause or excuse for Zeppinick's withholding of Ramirez's wages. Although Zeppinick testified

-15-

that he withheld the wages because he believed he had an offset, as noted above, the bankruptcy court found Zeppinick's testimony regarding the amount of the offset not credible.

Zeppinick argues that this case is distinguishable from Jercich because there the employer had used the withheld funds for his own benefit, a factor which the state court had found to constitute substantial oppression under California Civil Code § 3294, i.e., "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." However, while that fact bolstered the Court of Appeals' holding that the conduct was malicious, it was not dispositive. Therefore, what Zeppinick did with the funds is not relevant to the analysis here.

**CONCLUSION**

For the reasons explained above, the bankruptcy court did not err in applying issue preclusion to the Labor Commissioner's findings or in finding that the debt Zeppinick owed to Ramirez pursuant to the Judgment was nondischargeable under § 523(a)(6).

Accordingly, we AFFIRM.

-16-