HOUSTON, Justice.
The plaintiff, Myron Mitchell, appeals from a summary judgment for the defendant, State Farm Fire and Casualty Company (“State Farm”), in this third-party action to recover damages based on allegations of breach of contract, bad faith refusal to pay an insurance claim, and fraud. We affirm.
Our standard for reviewing summary judgments has been stated many times. The judgment in this case was proper if there was no genuine issue of material fact and State Farm was entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. The burden was on State Farm to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. If it made that showing, then the burden shifted to Mitchell to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against her. In determining whether there was a genuine issue of material fact, we must view the evidence in a light most favorable to Mitchell and must resolve all reasonable doubts against State Farm. Because this case was not pending on June 11, 1987, the “substantial evidence” rule is applicable. Ala.Code 1975, § 12-21-12. See Mixon v. Houston County, 598 So.2d 1317 (Ala.1992).
The evidence, viewed in the light most favorable to Mitchell, shows the following: After a fire had damaged her house and its contents, Mitchell contacted her insurance carrier, State Farm. State Farm assigned one of its claims adjusters, David Haddock, to inspect Mitchell’s damaged property and to settle her claim. Haddock reviewed with Mitchell the procedures that he would follow in handling her claim. He also told her that she would need to have the contents of her house removed so that the remaining repairs could be made to the damaged structure and that she would need to take immediate steps to “winterize” her house (i.e., to protect the house from the winter elements).[1] Haddock suggested to Mitchell that Olive Specialty Contractors, Inc. (“Olive”), a fire restoration company, could perform any work that she needed done, including general repair work to the house and any work associated with removing, cleaning, and storing the contents of the house. Haddock contacted Olive and *464 hired it to “winterize” Mitchell's house. However, State Farm did not, as a rule, hire contractors to handle the contents of a fire-damaged house, and Haddock did not hire Olive to do the major repair work on the house or to remove, clean, or store the contents of the house. Instead, Haddock left it up to Mitchell to hire the contractor of her choice to complete the repairs and to salvage the contents of the house.
Mitchell understood that she had the right to hire the contractor of her choice to complete the repair work. Mitchell negotiated with and hired Olive to handle the removal, cleaning, and storage of the contents of her house and Ricky Butler Construction Company to complete the major repairs. Neither Haddock nor any other State Farm representative was involved in these negotiations. As a result of discussions with Olive, Mitchell executed a document that, in pertinent part, provided:
“I ... authorize Olive Specialty Contractors, Inc., to perform repair and (or) cleaning services to my ... property and (or) contents located at [address inserted].
“I ... hereby assign to Olive Specialty Contractors, Inc., all my ... right, title, and interest in insurance proceeds with the State Farm Insurance Company to the extent of any service performed by Olive Specialty Contractors, Inc. Should I ... receive any insurance proceeds, I ... will immediately forward these funds to Olive Specialty Contractors, Inc.
[[Image here]]
“It has been made clear to me ... that Olive Specialty Contractors, Inc., is working for me ... and not the agent, adjuster, or Insurance Company.
“I ... also authorize State Farm Insurance Company to pay Olive Specialty Contractors, Inc., direct, if allowable by the Insurance Company involved.”
Pursuant to that authorization, Olive removed Mitchell’s furnishings, clothes, etc., from the house, cleaned them (or had them cleaned), put them in storage, and submitted to State Farm an itemized bill for those services. After reviewing that bill and concluding that Olive’s charges were reasonable, and pursuant to the authorization signed by Mitchell, Haddock issued a cheek payable to both Mitchell and Olive. Haddock made the check payable to both Mitchell and Olive so that Mitchell would have some protection in the event that she was dissatisfied with Olive’s performance. State Farm ultimately paid Mitchell up to her policy’s coverage limits for the damage to the contents of her house.
After Mitchell received State Farm’s check, which Mitchell thought was excessive and which sparked a dispute between Mitchell and Olive as to exactly how much of Mitchell’s personal property was supposed to have been removed and cleaned, Mitchell refused to endorse the cheek and to give it to Olive. Olive then sued Mitchell, seeking payment for services rendered. Mitchell did not notify State Farm that she had been sued by Olive, and she made no request for State Farm to provide her with an attorney to defend Olive’s action. Mitchell eventually filed this third-party action against State Farm. The trial court entered a summary judgment for State Farm and certified that judgment as final, pursuant to Rule 54(b), Ala.R.Civ.P.
The thrust of Mitchell’s argument upon which this action was based, as we understand it, is that Haddock did not supervise Olive so as to make certain that Olive did not remove and clean those personal things belonging to Mitchell that Mitchell did not feel were salvageable and did not want cleaned. Mitchell makes the following statement in her brief:
“The damage to the contents of ... Mitchell’s residence far exceeded the amount of her coverage, and the fact that State Farm ... elected not to supervise and adjust the losses concerning the contents proximately damaged ... Mitchell in that work in the amount of several thousand dollars, which she did not want, was performed on contents of her house, which were not salvageable, thus reducing the amount of insurance proceeds she actually received.”
Stated differently, Mitchell contends that her misunderstanding with Olive, which resulted in Olive’s doing more work than she actually *465 wanted done, was caused by Haddock’s failure to personally supervise Olive. Mitchell maintains that Haddock’s omission in this respect, together with State Farm’s failure to provide an attorney to defend her against Olive’s action, constituted a breach of contract and evidenced a bad faith failure to pay an insurance claim. Mitchell’s fraud claim is based on her contention that State Farm was under a duty to tell her that she was responsible for working with Olive to ensure that Olive removed, cleaned, and stored only those things that she believed to be salvageable.
State Farm contends that it was obligated under Mitchell’s policy to adjust the fire loss with Mitchell and that it did that. State Farm argues that it was not contractually responsible for supervising Olive and that a duty to defend Olive’s action against Mitchell never arose under the terms of the policy. After carefully reviewing the record, we agree.
Mitchell’s policy provided, in pertinent part, as follows:
“Loss Payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment....”
Our review of the policy reveals no provision suggesting that State Farm, through Haddock, was responsible for supervising Olive’s performance under Olive’s agreement with Mitchell. Furthermore, the evidence, even viewed in the light most favorable to Mitchell, would not support an inference that Haddock entered into an agreement with Mitchell to oversee Olive’s removal and cleaning of the contents of Mitchell’s house.[2] Mitchell understood that she had the right to choose her own contractor or contractors and that she was expected to make that choice. She did so. Mitchell, not Haddock, was in the best position to know which of her things she believed were salvageable and which she believed were not, and common sense dictates that it was Mitchell, not Haddock, who bore the primary responsibility for working closely with Olive during the process of removing, cleaning, and storing the contents of her house.
Furthermore, with respect to State Farm’s obligation to defend. Mitchell in a legal proceeding commenced against her, the policy provided:
“If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
“1) pay up to our limit of liability for the damages for which the insured is legally liable; and
“2) provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.”
“Bodily injury” is defined in the policy as “physical injury, sickness, or disease to a person.” “Property damage” is defined as “physical damage to or destruction of tangible property, including loss of use of this property.” “Occurrence” is defined as “an accident, including exposure to conditions, which results in ... bodily injury ... or property damage ... during the policy period.” The policy further states:
“Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:
[[Image here]]
“(b) immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence.”
Clearly, Olive’s action against Mitchell to recover for services rendered was not the kind of action covered by the policy, and, even if it *466 was, it would be clear that Mitchell breached her obligations under the policy by failing to properly notify State Farm of the action.
The summary judgment was proper with respect to Mitchell’s claim alleging breach of contract; consequently, State Farm was entitled to a judgment as a matter of law with respect to Mitchell’s bad faith claim as well. See Thomas v. Principal Financial Group, 566 So.2d 735 (Ala.1990), appeal after remand, 585 So.2d 816 (Ala.1991), cert. denied,-U.S.-, 112 S.Ct. 649, 116 L.Ed.2d 666 (1991) (a plaintiff in a “bad faith refusal” case must prove the existence of an insurance contract between the parties and a breach thereof by the defendant).
In support of her fraud claim, Mitchell argues that Haddock was under a duty to inform her that he was not going to supervise Olive’s cleaning of her property. See Ala. Code 1975, § 6-5-102, and the annotations thereto. Because there is no evidence apparent on the record from which one can reasonably infer that State Farm was contractually obligated to supervise the performance of Olive’s contract with Mitchell, and because there is no evidence from which one can reasonably infer that Mitchell could have been misled into believing that Haddock had assumed full, personal responsibility for supervising Olive’s removal and cleaning of each individual piece of Mitchell’s personal property, there is no basis for holding that Haddock had a duty to specifically tell Mitchell that he was not going to supervise Olive. The summary judgment was proper with respect to Mitchell’s fraud claim.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.

. The house had a hole in the roof and had no electricity. Haddock feared that freezing temperatures might cause further damage to the water pipes in the house.

. We note that we considered the affidavits of Mitchell and her daughter, Deborah Grandinetti, which State Farm moved to strike. The record does not reflect that the trial court granted the motion to strike. The trial court stated in its judgment that it had "considered the materials filed by the parties in support of and in opposition to [the summary judgment] motion.” We are not persuaded by State Farm's contention that these affidavits were due to be stricken.