[No. D033394. Fourth Dist., Div. One. Nov. 1, 2000.]

JAMES RATTAN et al., Plaintiffs and Appellants, v.
UNITED SERVICES AUTOMOBILE ASSOCIATION et al., Defendants
and Respondents.

716

**Counsel**

Richard P. Verlasky for Plaintiffs and Appellants.

Walters, Caietti, Rutan, Lopez & Wood, Douglas F. Walters and Karen D. Wood for Defendants and Respondents.

## OPINION

**BENKE, J.**—No doubt for their own convenience and as a means of limiting their claims costs, but also as a way of assisting their insureds, many homeowner insurers recommend and guarantee the work of particular general contractors or other professionals needed to perform repair work following covered losses. In such cases when a contractor or other professional fails to perform adequately, the contractor's or professional's conduct alone will not support a tort claim against the insurer. Thus, in this insurance bad faith case we find no error in the trial court's unwillingness to instruct the jury with respect to the circumstances under which a general contractor and personal property storage service recommended by the insurer could be agents of the insurer for purposes of determining the insurer's liability for tortious breach of the covenant of good faith and fair dealing. Accordingly, we affirm the trial court's judgment in favor of the insurer.

### FACTUAL SUMMARY

### 1. *Fire*

Plaintiffs and appellants James Rattan and Elaine Rattan own a home in El Cajon. At all pertinent times the home was insured by defendant and respondent United Services Automobile Association (USAA).[1] On April 1, 1996, the Rattans' home was severely damaged by a fire. Because of the substantial nature of the damage the Rattans were forced to leave the home and put most of their personal possessions in storage.

A representative of USAA, Cecilia Monge, inspected the home on April 3, 1996, and advised the Rattans she would be handling the structural portion of their loss, including the Rattans' claims for additional living expenses incurred while the home was being repaired. A second representative of USAA, Celerina Espena, visited the home on April 5, 1996, and advised the Rattans that she would be handling the personal property portion of their loss.

### 2. *Structural Repairs*

At the suggestion of USAA, the Rattans retained a general contractor, Baker Pacific Construction (Baker Pacific), to make the needed structural repairs. Baker Pacific was one of USAA's "preferred contractors," whose work USAA agreed to guarantee.

---

[1] The judgment entered in the trial court erroneously included as defendants USAA General Indemnity Co. and USAA Casualty Insurance Company. Those two entities were dismissed prior to trial on the stipulation of the parties.

Baker Pacific commenced working on the Rattans' home in April 1996. However its performance was defective in a number of respects. For instance the Rattans discovered that Baker Pacific had: covered up a burned stud in the master bedroom with foam and drywall instead of removing it; allowed Baker Pacific employees to live in the home; allowed Baker Pacific employees to make long-distance calls from the Rattan's telephone; did a poor job of painting; left a smell of smoke in the home; left baseboards missing; and frequently had no workmen at the site.

As a result of these problems, and with the Rattans' consent, on August 20, 1996, a USAA claims supervisor, Jimmy Young, told Baker Pacific that it was no longer authorized to do work on the Rattans' home. Young also arranged payment to the Rattans of the full amount Baker Pacific claimed it was due at the time it was asked to leave the job. Because they did not believe Baker Pacific was entitled to any additional payment, the Rattans refused to pay these amounts to Baker Pacific and Baker Pacific recorded a mechanic's lien against the Rattans' home.

Once again with the Rattans' consent, USAA retained another contractor, Integrity Builders, to complete the repairs. Integrity Builders completed work in December 1996 and the Rattans moved back into their home at end of December 1996. In general, the Rattans were pleased with the work performed by Integrity Builders. However once they moved back into the home they discovered a number of electrical problems, and in January of 1997 Integrity Builders retained an electrical contractor to inspect the home. The electrical contractor in turn discovered a number of defects in the electrical work performed by Baker Pacific[2] and the defects were remedied at USAA's expense.

In the early part of 1997 the Rattans filed their bad faith complaint against USAA. In preparation for trial the Rattans retained a claims adjustment expert who examined their home in early 1998 and found an odor of smoke. Upon further inspection the expert discovered the attic was covered with black smoke and soot. His findings were confirmed by USAA's claims supervisor in December 1998 and resulted in payment to the Rattans of an additional $19,245.42 for structural repairs. The agreement to pay for the additional structural repairs was made shortly after trial commenced. At trial USAA did not dispute that the attic smoke and soot should have been discovered earlier by Baker Pacific or Integrity Builders.

### 3. *Personal Property Repair and Replacement*

At the suggestion of a Baker Pacific employee, the Rattans hired Servpro of La Jolla to remove their personal belongings from their home and store

---

[2]Baker Pacific filed a petition in bankruptcy court in 1997.

them while the home was being repaired. The Rattans had no better luck with Servpro than with Baker Pacific. The Rattans and USAA discovered that the property which had not been damaged by the fire had been damaged by improper cleaning, storing and packing.

USAA agreed to pay the Rattans for the additional damage caused by Servpro. Toward that end USAA retained a fire restoration company, Reiter Mosier (RM), to retrieve, inventory, clean and assess the damage to the Rattans' property. In January 1998 USAA made an initial payment of $101,664.95 to the Rattans on their personal property claim.

Throughout 1998 and even after trial commenced, the Rattans, RM and USAA discussed additional items of personal property damage for which the Ratans believed they were entitled to additional payment from USAA. The Rattans believed that the inventories prepared by USAA claims personnel and RM were inaccurate. RM made its final report to USAA in January 1999, shortly before trial commenced. At the time of trial USAA had not paid the amounts due under the final RM report. Nonetheless by the time of trial USAA had paid approximately $241,000 on the Rattans' personal property claim.

### TRIAL COURT PROCEEDINGS

The Rattans' complaint alleged that USAA was liable for breach of contract and breach of the covenant of good faith and fair dealing. At trial the Rattans asked that the jury be given BAJI No. 13.20, which sets forth the circumstances under which one person may be found to be the agent of another.[3] In rejecting the instruction the trial court found that neither Baker Pacific, Servpro nor RM was an agent of USAA. The trial court stated: "[T]he underlying concept in this case is that the insurance company is not obliged to do anything other than evaluate the loss and pay money, and do that in a timely, efficient and appropriate way under the standards of the industry."

During the course of trial the Rattans' insurance expert testified as to requirements imposed on insurers under regulations promulgated by the California Department of Insurance.[4] The regulations were read to the jury by the trial court during the course of the expert's testimony. After all the regulations the expert relied upon had been read by the trial court, the trial

---

[3]Although the reporter's transcript clearly indicates the Rattans offered a form of BAJI No. 13.20, the proffered instruction could not be located in the trial court's records.

[4]The regulations are set forth in title 10, California Code of Regulations, sections 2695.2, 2695.5, 2695.7 and 2695.9.

court stated: "Now, by virtue of the fact, ladies and gentlemen, that these things call themselves standards, you can treat them as though they are kind of acknowledged standards of behavior in the industry as promulgated by, I guess, whatever agency is responsible for writing these regulations, probably the Department of Insurance and, therefore, don't necessarily carry the force and effect of law, but is designed to provide a framework within which people in the industry can operate." The Rattans' expert agreed with this characterization of the regulations.

Later in the trial the Rattans offered three instructions based upon the regulations relied upon by their expert.[5] The trial court refused the instructions and in pertinent part stated: "I read them to the jury . . . because they seemed to me to be potentially misconstrued by them as something more than guidelines or standards. I think they are, and I don't think I can instruct the jury that this is the law and that failure to do what this says is per se wrongful. You've got to go through the next step that says it was an unreasonable action in the context of this case."

The trial court did however instruct the jury that insurers have a nondelegable duty to timely and in good faith resolve claims by their insureds and to thoroughly investigate a claim, that the acts of a corporation's officers, employees and agents are the acts of the corporation, and that a party's compliance with the particular custom in a given business is relevant in considering whether the party has breached the covenant of good faith and fair dealing.

---

[5]The Rattans offered as instructions the following:

"Proof of claim means any documentation in the claimant's possession submitted to the insurer which provides any evidence of the claim that supports the magnitude or the amount of the claimed loss.

"Title 10

"Section 2695.2(s)"

"TITLE 10

"Section 2695.9

"(1) When a loss requires repair or replacement of an item or part, any consequential physical damage incurred in making the repair or replacement not otherwise excluded by the policy shall be included in the loss. The insured shall not have to pay for depreciation nor any other cost except for the applicable deductible.

"(2) When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace all items in the damaged area so as to conform to a reasonably uniform appearance."

"Duty to Respond:

"Upon receiving any communication from a claimant, regarding a claim that reasonably suggests that a respondent is expected, [an insurer] shall immediately, but in no event more than fifteen calendar days after receipt of that communication, furnish the claimant with a complete response based on the facts as then known by the [insurer]. This subsection shall not apply to require a communication with a claimant subsequent to receipt by the [insurer] of a notice of legal action by that claimant.

"Title 10, Section 2695.5(b)"

At the close of evidence the trial court granted USAA's motion for a directed verdict on the Rattans' punitive damages claim. The trial court found no evidence of willful wrongdoing on the part of USAA.

The jury returned a unanimous verdict finding that USAA had not breached its contract with the Rattans. The terms of the verdict form did not require that the jury reach the separate question of whether USAA had breached the covenant of good faith and fair dealing.

Judgment on the jury's verdict was entered and the Rattans filed a timely notice of appeal.

## DISCUSSION

## I

In their principal argument on appeal, the Rattans contend that the trial court erred in refusing to give BAJI No. 13.20.[6] We find no error.

According to the Rattans, "the jury was not able to understand that under ordinary rules of agency, the insurance company could have and should have been responsible for the incompetence and delays of their agents which clearly and directly contributed to the enormous delays in this case."

The central problem we have with the Rattans' argument is that they ignore the fact they had more than one contractual relationship with USAA. The first contractual relationship was embodied in the insurance policy. It is by now axiomatic that an insurance policy imposes upon insurers public as well as private obligations. (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401 [23 Cal.4th 951a, 97 Cal.Rptr.2d 151, 2 P.3d 1].) In particular, unlike other contractual relationships, an insurance contract permits an insured to recover tort damages when in bad faith the benefits of an insurance contract have been deprived. (See generally *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 684-685 [254 Cal.Rptr. 211, 765 P.2d 373].) Permitting a tort remedy in insurance cases is based in large part on the fact that an insured " 'does not seek to obtain a commercial advantage by purchasing the policy—rather, he seeks protection against calamity.' " (*Id.* at p. 684.) The insurance obligation is enforced by way of a tort remedy because assuring that insurance benefits are provided

---

[6]We recognize the Rattans bear the burden of presenting a complete record of the errors they rely upon on appeal and that they have not been able to locate the version of BAJI No. 13.20 they proffered. However in light of the reporter's transcript, which demonstrates BAJI No. 13.20 was requested, the interests of justice are best served·if we reach the Rattans' argument on the merits.

without resort to unnecessary litigation is a matter of public as well as private concern. (*Kransco v. American Empire Surplus Lines Ins. Co., supra,* 23 Cal.4th at p. 400; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1148 [271 Cal.Rptr. 246].)

In permitting recovery of tort damages for breach of the covenant of good faith and fair dealing, the insurance cases "were a major departure from traditional principles of contract law. We must, therefore, consider with great care claims that extension of the exceptional approach taken in those cases is automatically appropriate if certain hallmarks and similarities can be adduced in another contract setting." (*Foley v. Interactive Data Corp., supra,* 47 Cal.3d at p. 690.) Significantly, outside the area of insurance contracts, our Supreme Court has been unwilling to permit tort recovery for the bad faith breach of a contract, unless in addition to the breach of the covenant a defendant's conduct violates a fundamental public policy of the state. (See *id.* at pp. 669-700.)

In addition to the insurance policy and its special obligations, following the fire USAA entered into three other contracts with the Rattans. In particular, the record reflects that USAA guaranteed the work of both Baker Pacific and Servpro. USAA also warranted the restoration work of RM. However, these guarantees were not themselves contracts of insurance or part of the insurance policy USAA had issued to the Rattans. Rather, the fairly limited record of what USAA promised by way of its preferred contractor program[7] suggests at most that USAA undertook only to cure defects in the contractors' workmanship, as opposed to provide compensation for all the potential consequential damage that might have been caused by faulty workmanship. Protection for all consequential damage caused by the contractors would in effect have made USAA not the Rattans' insurer, but the liability insurer for the contractors. There is no evidence in the record which suggests that USAA undertook such a broad responsibility for its preferred contractors or that the Rattans understood that USAA would act as the contractors' liability insurer.

Unlike the provision of the insurance policy, enforcement of the guarantees does not require the availability of a remedy in tort. While we readily accept the principle that contract remedies are inadequate when an insurer fails to properly provide financial security to an insured, we cannot accept the notion that contract damages are inadequate as a remedy when use of the

---

[7]Although the guarantee was never reduced to writing , USAA's claims supervisor testified that under the program "The insured is the contractor's client but representing U.S.A.A., and then we would have to stand behind that contractor."

benefits is, as was the case here, defective. An insured who faces an insurer unwilling to provide the financial benefits of a policy is in a difficult box; the financial security, which the insured bargained for and which is denied, makes it almost impossible for the insured to recover the policy benefits, and the public interest in providing a tort remedy against the insurer is manifest. (See, e.g., *Kransco v. American Empire Surplus Lines Ins. Co., supra,* 23 Cal.4th at p. 400; *Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d at p. 574; *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d at p. 1148.) In contrast, the insured who has been provided a policy's financial benefits but is unhappy with the paint job performed by an agent of the insurer has contractual remedies against the painter, as well as any insurer, such as USAA, acting as a guarantor of workmanship. The insured may, as was the case here, simply find another painter and require that the insurer pay for it. In this situation it is difficult to see any substantial public interest which supports any additional tort remedy.

We also have some concern that were we, as the Rattans seem to suggest, to find insurers liable in tort for the omissions or errors of contractors engaged to provide repair and restoration services, insurers would obviously refrain from guaranteeing the work of such contractors. In many instances this might deprive less sophisticated insureds who have suffered a catastrophic loss valuable protection from incompetent or unscrupulous contractors.

Returning then to BAJI No. 13.20, the difficulty we perceive is that given as proposed by the Rattans—that is, without any distinction being drawn between USAA's obligations as an insurer and its collateral obligations as a guarantor of workmanship—the instruction would permit the Rattans to recover in tort for a bad paint job or defective electrical work. As we have discussed, tort remedies are not available for those breaches of noninsurance contracts.

We fully accept that where an insurer has used an agent to determine when to pay benefits, the agent's derelictions might support liability in tort. We also fully recognize that the line between decisions which involve payment of benefits and the use of those benefits may in some circumstances be difficult to discern. Indeed, USAA's counsel conceded that because it assisted USAA in assessing damage, RM may have been USAA's agent for purposes of providing policy benefits. However this difficulty does not warrant the giving of an instruction which entirely ignores the distinction between the benefits of an insurance policy and benefits provided by entirely collateral obligations.

## II

The Rattans next contend the trial court erred in failing to give as instructions the Department of Insurance claims practices regulations. Like the trial court, we believe this use of the regulations would have been inappropriate.

Even in first party insurance cases, neither the Insurance Code nor regulations adopted under its authority provide a private right of action. (*Zephyr Park v. Superior Court* (1989) 213 Cal.App.3d 833, 839 [262 Cal.Rptr. 106].) Thus, any particular violation of the regulations does not require a finding of unreasonable conduct. (See *California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1175-1176 [73 Cal.Rptr.2d 182].) Rather, as the trial court stated, at most the regulations, which were in evidence, may be used by a jury to *infer* a lack of reasonableness on USAA's part. Because given as instructions the regulations would have suggested to the jury that any violation of the regulations was per se a breach of contract or an act bad faith, rather than only evidence of a breach or bad faith, the trial court was fully warranted in rejecting them.[8]

## III

Because the jury found no breach of contract and because we have found no instructional error warranting reversal, there is no basis upon which an award of punitive damages may be made in this case. Thus, we need not consider the Rattans' argument that the trial court acted hastily in granting a directed verdict dismissing their claim for punitive damages.

Judgment affirmed. Respondent to recover its costs of appeal.

Kremer, P. J., and McDonald, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 17, 2001.

---

[8]We note any error in failing to give the regulations as instructions would have been harmless. Notwithstanding the fact that the regulations were provided to the jury as evidence and relied upon counsel in argument, the jury returned a unanimous defense verdict after approximately 90 minutes of deliberation. Given these circumstances the Rattans would not be able to demonstrate the failure to provide the regulations as instructions misled or confused the jury. (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 570-571 [34 Cal.Rptr.2d 607, 882 P.2d 298].)