A07A1158. GUIDEONE MUTUAL INSURANCE COMPANY
v. HUNTER et al.
(650 SE2d 424)

PHIPPS, Judge.

Christopher Simpson owned a house that he insured through GuideOne Mutual Insurance Company and leased to Michael and Melissa Hunter. The Hunters, on behalf of themselves and their children, brought this suit against Simpson and GuideOne to recover damages for personal injuries and property losses sustained as a result of mold in the house. The Hunters charged both Simpson and GuideOne with negligence and breach of contract in failing to discover and remediate the mold. The trial court granted summary judgment to GuideOne on the Hunters' breach of contract claim, and we granted GuideOne's application for interlocutory appeal from the denial of its motion for summary judgment against the Hunters on their negligence claim. Because under the undisputed facts of this case GuideOne breached no duty owed to the Hunters, we reverse.

> In order to prevail on a motion for summary judgment under OCGA § 9-11-56, the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

---

[1] *Benton v. Benton,* 280 Ga. 468, 470 (629 SE2d 204) (2006) (citations omitted).

So viewed, the evidence shows that after Simpson bought the house in Woodstock, Georgia, in 2001, GuideOne issued a homeowners insurance policy listing him as the named insured. Upon moving to another state, Simpson leased the house to Michael and Melissa Hunter in June 2002. The Hunters then began living in the house with their two children. On or about November 14, 2002, strong winds during a storm damaged the roof causing rain water to leak into the house. The Hunters promptly notified Simpson, who in turn filed a claim with GuideOne for damage to the roof of the house and to the interior. On November 20, Randy Harrison, a claims adjustor for GuideOne, inspected the house and took numerous photographs of the damage. At Simpson's request, a representative of a roofing company known as J&G Metal Tops was present at the inspection. By mid-December, Harrison had approved a proposal by J&G to do repair work consisting of removal and replacement of roofing material and water-damaged drywall, ceiling, and carpet; and GuideOne had paid Simpson about $6,700 for the repairs.

Later in December, the Hunters began to observe mold in the house. They informed Simpson, who in turn notified Harrison. Testimony given by Harrison showed that he did not take any action because he thought that J&G was dealing with the situation. In January 2003, the Hunter family began to get sick. As a result, Melissa Hunter hired American Contamination Control (ACC) without notifying either Simpson or Harrison. Thomas Petska of ACC went to the house beginning on or about January 7; he collected swab and air samples; they revealed extremely high levels of indoor airborne molds and extremely high amounts of molds growing on the housing infrastructure due to moisture intrusion resulting from the roof leak. As a result, the Hunters vacated the house on January 31. After Petska provided Harrison with the testing results, in February Harrison gave approval for mold remediation. Between February and June 2003, Harrison issued checks to ACC in payment for remediation of mold and additional repairs to the house costing over $38,000.

Claiming that they were third-party beneficiaries of the homeowners' insurance policy, the Hunters sued GuideOne along with Simpson and charged GuideOne with breach of contract and negligent repair. In support of their negligence claim, the Hunters submitted the affidavit of Petska. He testified that the photographs taken by Harrison during his November 2002 inspection showed that, under guidelines for water damage assessment and mold remediation (in which Harrison had received training), the house should have been assessed for water damage to prevent the escape of mold into the residential environment, and the Hunters should have been notified of concerns about mold.

After the Hunters filed their complaint against Simpson and GuideOne, GuideOne brought a separate action against Simpson and the Hunters seeking a declaratory judgment that Simpson's house was not covered by the GuideOne homeowners' insurance policy at the time in question through application of a rental exclusion provision in the policy. GuideOne's motion for summary judgment was granted in the declaratory judgment action.

Accordingly, the trial court in this case granted GuideOne's motion for summary judgment on the Hunters' breach of contract claim. On the Hunters' negligence claim, however, the court found evidence that GuideOne, through its adjustor Harrison, was called upon to inspect the house, determine damages and cost of repairs, and facilitate handling of Simpson's claim; and that Simpson relied on Harrison to make recommendations as to what action should be taken to repair the house. The court found genuine issues of material fact as to whether Harrison was negligent in failing to recommend remediation to stop roof leaks, in failing to warn Simpson and/or the Hunters of the danger of mold, and in failing to have the property evaluated for mold damage.[2] The court concluded that GuideOne could thus be held liable to the Hunters under Section 324A of the Restatement (Second) of Torts, as adopted in *Huggins v. Aetna Cas. & Surety Co.*[3]

Under Section 324A:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.[4]

---

[2] The trial court thus found no evidence in support of allegations in the Hunters' complaint that Harrison had assumed an active role in directing and supervising repairs to the house and that he had refused to authorize various requested repairs. We find no evidence in support of these allegations either.

[3] 245 Ga. 248, 249 (264 SE2d 191) (1980).

[4] *Davenport v. Cummins Alabama, Inc.*, 284 Ga. App. 666, 673 n. 9 (644 SE2d 503) (2007); *Whitmire v. Ga. Power Co.*, 270 Ga. App. 586, 592 (2) (607 SE2d 213) (2004); *Atlanta Affordable &c. Partnership v. Brown*, 253 Ga. App. 286, 292 (3) (558 SE2d 827) (2002); *BP Exploration & Oil v. Jones*, 252 Ga. App. 824, 829 (2) (558 SE2d 398) (2001) (physical precedent only); *Huggins*, supra.

In case of loss to covered property, the homeowners' insurance policy issued by GuideOne to Simpson required the insured to give prompt notice to the insurer, keep an accurate record of repair expenses, show the damaged property, and send upon request a proof of loss setting forth specifications of damaged structures and detailed repair estimates. The policy further provided that covered property losses were to be settled either by payment to the insured of the actual cash value of the property at the time of the loss or by payment of the repair or replacement costs. Testimony given by Harrison and Simpson shows that, although Harrison could have had other contractors perform the repair and replacement work, he authorized J&G to perform the work because he understood that J&G was the contractor Simpson wanted to use; and he approved J&G's proposal because Simpson was agreeable to it (and also presumably because Harrison found the proposed work to be necessary and the costs to be reasonable). Although Simpson testified that he was relying on Harrison and GuideOne to advise him on the necessary extent of repairs, the homeowners' insurance policy did not impose such a duty on GuideOne and there is no evidence that Simpson informed Harrison or GuideOne of his expectation in that regard. Nor did GuideOne undertake such a duty, as by delegating to a contractor selected by it the responsibility for determining the necessary extent of repairs. Nor is there any evidence that Harrison, through any action on his part, assumed such a duty or undertook to render that service. The evidence, viewed in a light most favorable to the Hunters, does not show that GuideOne through Harrison undertook to do anything more than inspect the property in discharge of its obligation to pay the actual cash value of damaged property or to defray the repair and replacement costs. GuideOne was thus entitled to judgment as a matter of law on the Hunters' negligence claim based on Section 324A of the Restatement.[5] Remaining issues are moot.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 30, 2007.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, John M. Hawkins*, for appellant.

*Mahaffey, Pickens & Tucker, Gerald Davidson, Jr., Eugene C. Brooks IV*, for appellees.

---

[5] *Davenport*, supra at 673 (2).