Michael DUNN and Alissa Dunn, individually, and as parents and natural guardians of Tanner Dunn and Gage Dunn, Plaintiffs–Appellants,

v.

AMERICAN FAMILY INSURANCE, a/k/a American Family Mutual Insurance Company, a/k/a American Family Insurance Group, a corporation, Defendant–Appellee.

No. 09CA2173.

Colorado Court of Appeals, Div. VI.

Nov. 24, 2010.

The Kofoed Law Firm, L.L.C., David L. Kofoed, Englewood, Colorado, for Plaintiffs–Appellants.

Lambdin & Chaney, LLP, Suzanne Lambdin, Michael G. Paul, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

In this action for breach of the duty of good faith and fair dealing, plaintiffs, Michael Dunn and Alissa Dunn, individually and as parents and natural guardians of Tanner Dunn and Gage Dunn, appeal from the summary judgment entered in favor of defendant, American Family Insurance. The pri-

mary issue on appeal is whether the court erred in its determination that plaintiffs' bad faith claims did not fall within the duties owed to them by defendant. We affirm in part, reverse in part, and remand.

## I. Background

### A. Facts

These facts are undisputed: Plaintiffs reported a claim to defendant, their homeowners insurance provider, when a sewer and water backup caused sewage to seep into and flood their basement. Defendant provided plaintiffs with contact information for a company, Insurance Contractors and Associates (ICA), which plaintiffs hired to remediate the flooding.

ICA was unsuccessful, however, and sewage and water remained standing in plaintiffs' basement and, in particular, around their HVAC system. In the course of the remediation attempt, black mold was detected on the furnace wall. Plaintiffs, who were suffering from respiratory and other health problems, vacated their home on the following day.

Dissatisfied with the progress on the work performed on their house by a second contractor, Western Restoration, and then by a third contractor, Quest Environmental, plaintiffs hired Walter Hayhurst to finish the job. The house remained vacant throughout that winter and, because the furnace was not functioning, water froze in the pipes, which had to be replaced.

Ultimately, because mold had spread throughout the home, plaintiffs replaced its entire contents, including clothing, furniture, carpeting, and tile flooring. In total, plaintiffs received approximately $340,000 in insurance proceeds from defendant.

### B. Plaintiffs' Claims

Plaintiffs filed this action, alleging, as relevant here, bad faith breach of their insurance agreement. Their complaint did not allege that defendant had denied them the financial benefits available under their policy, but asserted that defendant breached its good faith duty (1) by failing to screen ICA for expertise and liability insurance coverage before recommending it to plaintiffs, and to observe, coordinate, and monitor the remediation it performed; (2) by failing to advise plaintiffs about dangers associated with their initial loss, specifically, the potential for mold contamination, and the need to protect their home against freezing conditions; and (3) by failing to communicate with plaintiffs and Western Restoration regarding policy claims and coverage. They claimed, further, that defendant's breach caused them "extreme mental anguish and emotional distress," derived from the loss of their personal property, loss of occupancy of their home, and illness associated with mold contamination.

Defendant moved for summary judgment on the ground that plaintiffs' bad faith claims did not fall within the duties defendant owed to its insured. Considering the motion, plaintiffs' response, and affidavits submitted in support, the court agreed with defendant. In its ruling, the court reasoned that an insurer's duty of good faith and fair dealing with regard to its insured essentially is "to adjust claims in good faith" and, therefore, its tort liability arises when it "refuses or delays payments owed to the insured." It concluded that the actions or omissions alleged in the complaint were unrelated to the adjustment and payment of claims and, accordingly, could not as a matter of law substantiate a claim for bad faith breach of contract.

## II. Standard of Review

■ Because the existence of any duty owed by a particular defendant to a particular plaintiff is a matter of law, *Bailey v. Huggins Diagnostic & Rehab. Ctr., Inc.*, 952 P.2d 768, 772 (Colo.App.1997), we review de novo the trial court's determination that defendant had no good faith duty to provide to plaintiffs the services they demanded. *See Montoya v. Connolly's Towing, Inc.*, 216 P.3d 98, 103 (Colo.App.2008); *Moore v. Western Forge Corp.*, 192 P.3d 427, 434 (Colo.App. 2007).

We also review the trial court's summary judgment de novo. *See Westerman v. Rogers*, 1 P.3d 228, 230 (Colo.App.1999). "Summary judgment is appropriate only if there is

no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Peterson v. Halsted,* 829 P.2d 373, 375 (Colo.1992); *accord* C.R.C.P. 56(c).

In determining whether summary judgment is proper, we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and resolve all doubts about the existence of any material fact against the moving party. *Casebolt v. Cowan,* 829 P.2d 352, 354 (Colo.1992).

### III. First–Party Bad Faith Claims—Generally

■ Insurance agreements, like every contract entered into in Colorado, contain an implied duty of good faith and fair dealing. *E.g., Goodson v. American Standard Ins. Co.,* 89 P.3d 409, 414 (Colo.2004); *see also* § 10–1–101, C.R.S.2010 ("all persons having to do with insurance services to the public [shall] be at all times actuated by good faith in everything pertaining thereto").

■ With respect to a first-party bad faith claim, like that here, an insurer breaches this duty when it (1) unreasonably denies an insured the benefits of his or her policy (2) knowing that its conduct is unreasonable, or in reckless disregard of its lack of reasonableness. *Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1275 (Colo.1985); *see also Cary v. United of Omaha Life Ins. Co.,* 68 P.3d 462, 466 (Colo.2003).

■ All aspects of payment, including the adjustment of a claim, that is, the "[determination] of the amount that an insurer will pay an insured to cover a loss," *see Blacks Law Dictionary* 48 (9th ed.2009), fall within an insurer's good faith duty to its insured. *See Lazar v. Riggs,* 79 P.3d 105, 107 (Colo.2003).

■ Moreover, Colorado recognizes the viability of a claim of bad faith even if the express terms of the contract have been honored by the insurer. Thus, for any actions pertaining to the investigation and handling of a claim, an insurer acting unreasonably, and with knowledge or reckless disregard, may be held liable in tort for the breach of the covenant of good faith and fair dealing.

*See Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1363 (Colo.1993) (an insurer's good faith duty "is not limited ... merely to the claims or cancellation contexts," but "is a broad and wide-ranging one, extending to everything pertaining' to the provision of insurance services to the public"); *Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 572 (Colo. App.2003) ("Bad faith breach of an insurance contract encompasses the entire course of conduct...."); *Flickinger v. Ninth Dist. Prod. Credit Ass'n,* 824 P.2d 19, 24 (Colo. App.1991); *see also* § 10–1–101 ("all persons having to do with insurance services to the public [must] be at all times actuated by good faith in everything pertaining thereto"); § 10–3–1104(1)(h)(II), (III), (V), C.R.S.2010 (it is an unfair or deceptive trade practice to "[f]ail[ ] to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies"; to "[f]ail[ ] to adopt and implement reasonable standards for the prompt investigation of claims"; or to "[f]ail[ ] to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed").

### IV. Application

Plaintiffs' complaint alleged that in the process of resolving their insurance claim, defendant breached its duty of good faith and fair dealing in three respects: by failing to monitor and supervise contractors; by failing to protect plaintiffs from mold contamination, and their home against freezing conditions; and by failing to communicate regarding plaintiffs' coverage under their policy. We disagree that defendant here had a good faith duty concerning the first two portions of their claim, but agree with plaintiffs that defendant had a good faith duty to communicate promptly and, therefore, that the entry of summary judgment against them on that part of their bad faith claim was premature.

### A. The good faith duty to an insured does not include supervision of an independent contractor.

■ We will assume, as plaintiffs allege, that ICA was hired on defendant's recommendation to remediate the flooding and

mold contamination in plaintiffs' home. Nevertheless, we agree with the trial court that defendant did not have a good faith duty to monitor or supervise ICA.

■ Generally, one not a party to a contract cannot be liable for its violation. *Gorab v. Equity General Agents, Inc.*, 661 P.2d 1196, 1198 (Colo.App.1983). Here, it is undisputed that it was plaintiffs who ultimately decided to retain ICA, and that defendant has never been a party to that contract. It is also undisputed that plaintiffs? insurance policy contained no provision requiring defendant to supervise or monitor independent contractors, and plaintiffs submitted nothing to suggest that defendant represented to them that it would provide this service.

Although Colorado appellate courts have not specifically addressed whether an insurer's duty of good faith and fair dealing requires it to ensure that any contractor it recommends for repair or remediation work will perform satisfactorily, courts in other jurisdictions have, in analogous circumstances, declined to recognize a tort remedy for an insured who is dissatisfied with a contractor's performance, but who (like plaintiffs) otherwise has received the financial benefits of his or her policy. *See Moncada v. Allstate Ins. Co.*, 471 F.Supp.2d 987, 998 (N.D.Cal.2006) (applying California law; even where insurer acted as intermediary between insured and contractor insurer assigned to the job through preferred vendor program, insurer not liable for contractor?s performance); *Rattan v. United Servs. Auto. Ass'n*, 84 Cal.App.4th 715, 101 Cal.Rptr.2d 6, 11–12 (2000); *Mitchell v. State Farm Fire & Cas. Co.*, 642 So.2d 462, 465 (Ala.1994); *Mitts v. H.I.P.*, 104 A.D.2d 318, 478 N.Y.S.2d 910, 911 (1984) (health insurance provider not liable for malpractice of medical groups or physicians participating in insurance plan as independent contractors); *cf. Melichar v. State Farm Fire & Cas. Co.*, 143 Idaho 716, 152 P.3d 587, 593 (2007) (insurer could not be held liable for breach of implied warranty of workmanlike performance for actions of independent contractor it had recommended to homeowner to remediate mold damage).

■ Under this authority, when an insured selects and retains an independent contractor, even upon the recommendation of his or her insurer, the insured has primary responsibility for supervising the contractor, absent any representation that the insurer would assume that duty. *See Mitchell*, 642 So.2d at 464–65. Further, when an independent contractor's negligence causes damage beyond the initial loss, the insured's proper remedy is to recover from that contractor. *See Moncada*, 471 F.Supp.2d at 998; *Melichar*, 152 P.3d at 593. We agree with this reasoning. To hold otherwise would effectively render an insurer the liability carrier for any independent contractor performing work for its insured. *See Rattan*, 101 Cal. Rptr.2d at 11.

■ For the same reasons, because defendant had no duty to effectively act as ICA's liability insurer, we disagree with plaintiffs? related contention that defendant was obligated to confirm that ICA carried adequate liability insurance before recommending it. *Cf. Broderick Inv. Co. v. Strand Nordstrom Stailey Parker, Inc.*, 794 P.2d 264, 267 (Colo. App.1990) (where insurance agency issued to client a certificate verifying contractor's liability policy, agency had no duty to inform client of reduction in contractor's coverage). Furthermore, although the parties disagree as to who selected ICA, it is not disputed that, before plaintiffs hired ICA, they had adequate opportunity to inquire into its insurance arrangements.

B. Under the circumstances here, defendant had no good faith duty to ensure that the home was adequately heated, or to warn plaintiffs about the potential for mold contamination.

■ Plaintiffs' policy provided that, in the event of a loss, plaintiffs were required to make reasonable and necessary repairs to the property and protect it from further damage. It also explicitly set forth that defendant would not cover damages resulting from the freezing of plumbing or heating systems while the property was vacant unless plaintiffs had taken precautions either to maintain heat in the building or to shut off the water supply and drain the system and appliances.

Property insurance agreements commonly contain provisions, such as these, requiring the insured to exercise reasonable means to protect and preserve insured property after a loss. *See Carrizales v. State Farm Lloyds,* 518 F.3d 343, 349–50 (5th Cir.2008); *American Home Assurance Co. v. Merck & Co.,* 386 F.Supp.2d 501, 517 (S.D.N.Y.2005); *Henri's Food Products Co. v. Home Ins. Co.,* 474 F.Supp. 889, 892 (E.D.Wis.1979); *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 363 N.E.2d 985, 993–994 (1977). Typically, actions concerning such duties on the part of an insured arise when an insurer refuses to pay for that portion of the loss that could have been mitigated by an insured's reasonable efforts to prevent further damage. *See Carrizales,* 518 F.3d at 349–50 (to the extent an insured fails to protect or preserve property after initial loss, damage caused by that failure offset against his or her recovery of policy benefits).

Here, although not required to do so, defendant covered the cost of the damage resulting from the frozen pipes, and plaintiffs do not dispute this. Nevertheless, they contend that defendant should pay additional damages in tort because defendant had a good faith duty to make sure the home was winterized while it was unoccupied. We disagree.

Even drawing all inferences in plaintiffs' favor, we decline here to extend defendant's duty to act in good faith to require it to undertake obligations that were expressly conferred on plaintiffs. *See Lira v. Shelter Ins. Co.,* 913 P.2d 514, 517 (Colo.1996) (where insurance contract expressly disclaims coverage for punitive damages, insurer's failure to negotiate to protect insured from such damages is not bad faith). Moreover, not only were plaintiffs required to protect their property from such collateral losses, but they also were on notice, indeed obligated by the plain terms of their policy, to independently take necessary measures to prevent this particular loss. *See Huff,* 363 N.E.2d at 993–94 (insured cannot recover for freezing damage where she failed to exercise due diligence to maintain heat in vacant home or drain water systems).

■ Similarly, we reject plaintiffs' contention that defendant's duty to act in good faith required it to warn plaintiffs that flooding could cause further damage to their home, including mold, which, in turn, could cause adverse health consequences. Defendant?s adjustor, accompanied by representatives of Western Restoration and Quest Environmental, inspected the mold the same day it was discovered and, upon Quest's recommendation, plaintiffs vacated their home the following day. Defendant ultimately met its obligation to cover the cost of mold remediation to the limits of plaintiffs' insurance policy. Nothing in the record suggests that the policy imposed, or that defendant assumed, any additional obligations in this regard. *See GuideOne Mut. Ins. Co. v. Hunter,* 286 Ga.App. 852, 650 S.E.2d 424, 427 (2007) (unless otherwise obligated by insurance contract, insurer's good faith duty does not require it to assess water damage or mold remediation upon report of water intrusion into home).

C. Defendant had a good faith duty to adequately and promptly communicate in response to plaintiffs' claim.

■ We agree with plaintiffs, however, that defendant had a good faith duty to adequately and promptly communicate in the course of investigating and handling their claim.

1. Contrary to the trial court's ruling, plaintiffs' allegations as to this portion of their claim set forth a good faith duty.

An insurer is required to "affirm or deny ... claims within a reasonable time after proof of loss statements have been completed" and must "acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." § 10–3–1104(1)(h)(II), (V) C.R.S. 2010; *see American Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 343 (Colo.2004) (while not creating a private right of action, section 10–3–1104(1)(h) provides guidance in determining what standard of care is required of insurers); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 165 Wash.2d 122, 196 P.3d 664, 668 (2008) (recognizing

"procedural bad faith" claim, and interpreting Wash. Admin. Code 284–30–330(2)–(4) (identical to § 10–3–1104(1)(h)(II)–(IV)) to impose on every insurer "a duty to act promptly, in both communication and investigation, in response to a claim").

The need for prompt communication and investigation is obvious: besides the absence of peace of mind, the untimely adjustment of a claim exposes a claimant to additional loss of property. Thus, we conclude that defendant had a duty to promptly and effectively communicate with anyone it was reasonably aware had or legitimately needed information pertaining to the handling of plaintiffs' claim. *See Brodeur v. American Home Assur. Co.,* 169 P.3d 139, 147 n. 7 (Colo.2007) ("bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts"); *Cork v. Sentry Ins.,* 194 P.3d 422, 427 (Colo.App. 2008); *cf. Burgess v. Mid–Century Ins. Co.,* 841 P.2d 325, 328–29 (Colo.App.1992) (bad faith for insurer to deny coverage for insured's treatment by osteopath where it declined to consider osteopath's evaluation of insured's condition); *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565, 573 (1986) (insurer acted in bad faith by refusing to disclose its investigator's report to insured).

### 2. Remand is required.

Because we have determined that defendant had a good faith duty in this regard, the case must be returned for trial on the remaining questions of whether defendant breached its good faith duty to communicate and, if so, whether and to what extent plaintiffs were injured by that breach.

Because the good faith duty we recognize here is a matter of first impression, for guidance on remand, we frame plaintiffs' claim, in that light, as follows. According to plaintiffs, Gary Heitzman, from Western Restoration, was hired by and responsible to defendant for remediation of the mold discovered in the furnace of plaintiffs' home. Also according to plaintiffs, despite repeated efforts, neither they nor Heitzman were able to obtain defendant?s confirmation that certain repairs Heitzman considered necessary to perform were covered under plaintiffs' policy. In his deposition, Heitzman explained that, without

an assurance from either defendant or plaintiffs that one would pay if the other did not, he was hesitant to go forward with the work and made little progress in cleaning up the mold. Plaintiffs allege that eventually, due to this lack of progress, they retained another contractor, causing further delays in the mold remediation. Plaintiffs also allege that this delay permitted the mold contamination to worsen and spread, causing more extensive damage to their home and adverse consequences for their health.

Thus, on remand, plaintiffs will be required to prove that Western Restoration acted reasonably in refusing to proceed without defendant's confirmation or authorization, that defendant?s refusal to affirm or deny that certain remediation was covered under plaintiffs' policy was unreasonable, that defendant was aware of or recklessly disregarded the unreasonableness of its refusal, and that any undue delay in payment or reimbursement for flood and mold remediation caused plaintiffs' emotional distress. *See Goodson,* 89 P.3d at 417 (damages for emotional distress available in action for bad faith breach of insurance contract where unreasonable denial of insurance benefits causes anxiety, fear, or stress, even where benefits are eventually paid).

### D. Expert testimony was not necessary.

We disagree with plaintiffs' contention that expert testimony was necessary to determine whether, here, defendant had a good faith duty to plaintiffs. Thus, in deciding the question of duty, the trial court was not required to consider the proffered testimony of an expert on insurance industry standards. *See Bailey,* 952 P.2d at 772 ("Whether the circumstances of [a] case give rise to a duty of due care is a question of law for resolution by the court."); *see also Surdyka v. DeWitt,* 784 P.2d 819, 822 (Colo.App. 1989) ("[T]he standard of conduct of [an insurer] in relation to the insured must be measured by general principles of negligence.").

We note, however, also for purposes of remand, that the proffered testimony may be relevant to the determination of whether defendant acted unreasonably in this regard,

and whether it knew of the unreasonableness of its conduct or acted with reckless disregard of such unreasonableness, resulting in injury to plaintiffs. *See Allen,* 102 P.3d at 343.

The judgment dismissing the complaint is affirmed except as to plaintiffs' claim that defendant breached its duty of good faith and fair dealing by failing to promptly and effectively communicate. That part of the judgment is reversed, and the case is remanded to the trial court with directions to reinstate that portion of the complaint and for further proceedings as necessary to resolve plaintiffs' claim.

Judge KAPELKE * and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.