**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 14, 2013**

# In the Court of Appeals of Georgia

A12A2443. GARNER AND GLOVER COMPANY v. BARRETT
et al.

BOGGS, Judge.

In this interlocutory appeal, Garner and Glover Company ("Garner"), an insurance producer, contends it was entitled to summary judgment in its favor because (1) it owed no duty to notify an excess insurance carrier of a claim on behalf of an additional insured, Atlanta Gas Light Company ("AGL"); and (2) the underlying plaintiffs cannot file a direct action against it based upon a settlement with and assignment from AGL. For the reasons explained below, we reverse.

"On appeal from the grant or denial of summary judgment, we apply a de novo standard of review." (Citation omitted.) *Coca-Cola Bottlers' Sales &c. v. Novelis Corp.*, 311 Ga. App. 161 (715 SE2d 692) (2011). "[T]he moving party must

demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Punctuation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see also OCGA § 9-11-56 (c). So viewed, the record shows that Garner assisted its client, Coosa Valley Contractors, Inc., with the procurement of two policies of insurance that named AGL as an additional insured: a $1 million general liability policy with Valley Forge Insurance Company ("CNA") and a $1 million commercial umbrella excess liability policy with National Union Insurance Company ("National").

On July 19, 2003, an AGL claims administrator, Carolyn Strickland, sent a Garner employee, Hannah Chambley, the following letter via fax :

> I am writing to notify you of a complaint with which we were served on July 1, 2003. We are an additional insured on policy number C144164548 with Garner & Glover Company for all occurrences between July 1, 2001 and July 1, 2002 ("Policy"). Accordingly, this is a request for coverage under the Policy. The Company hereby tenders defense to Garner & Glover.

Included with the letter were the complaint filed against AGL by the Barretts and a copy of the certificate of insurance issued to Coosa Valley Contractors. The attached

2

complaint prayed for damages of $10 million. After learning from Chambley that the general liability carrier was CNA, Strickland sent a copy of the complaint directly to CNA. In response to Strickland's letter, Chambley also forwarded it to CNA.

The certificate of insurance included with Strickland's letter shows that the policy number listed in her letter corresponds with the general liability policy issued by CNA; the excess policy insurance number was also listed on the same page of the certificate. Strickland testified that she referenced only the general liability policy number in her letter because "[t]hat's all [she] ever did." Although she admitted that she did not ask Garner to notify all insurance carriers of the claim, it was her expectation that Garner would notify the excess carrier. She could not explain the basis for this expectation, testifying "I just know I had to put [Garner] on notice to keep us out of default, and notifying the excess carrier, I never did. I guess the supervisor did that." She testified that she did not know "what else [her] supervisor would do in that capacity, if it was to reach more than what was covered under general liability." She also admitted that she had no experience with any insurance producer notifying an excess carrier.

Before sending the July 19, 2003 letter, Strickland had had no dealings with Garner or its employees. She explained that when AGL received a claim involving

3

a contractor generally, they would pull the certificate of insurance on file and contact the insurance producer listed on the form because AGL was usually listed as an additional insured on the certificate of insurance. She explained that sometimes she would obtain information from the producer to notify the insurance carrier herself, and sometimes the producer would notify the insurance carrier for her. She did not read the complaint before she forwarded it to Garner.

Chambley, the Garner employee, testified that she did not read the complaint attached to Strickland's letter. She agreed that it would have been "CNA's decision whether to notify the excess carrier." The principals of Garner testified that the agency did not automatically notify excess insurance carriers in all cases. They testified that typically, the adjuster handling the underlying policy claim would make the decision about whether the excess insurance carrier should be notified after investigating the facts of the particular claim. They explained that notifying the excess insurance carrier of any and all claims could harm the interest of the named insured and agency client during policy renewal with regard to premiums.

In this case, Garner notified the excess carrier, National, in September 2007 when the CNA adjuster handling the claim requested that it do so. National subsequently denied coverage, in part, based upon AGL's failure to notify it "as soon

as practicable" after a suit was brought against it that was "reasonably likely to involve" the excess policy. AGL subsequently agreed to a $2 million consent judgment in exchange for the Bartletts' agreement not to enforce it against AGL. The consideration for the Bartletts' agreement included the assignment of AGL's claims against National and Garner to the Bartletts in addition to CNA's payment of its $1 million policy limits.

The Bartletts, as assignees of AGL, filed suit against National and Garner to collect the remaining $1 million and an additional $500,000 in attorney fees and bad faith penalties. After this court determined that a pollution exclusion did not bar coverage under National's policy,[1] the Bartletts settled with National for $800,000 and dismissed National from the suit. Garner moved for summary judgment, and the trial court denied the motion based upon its conclusion that "there is at least an issue of fact as to whether [Garner] should have notified National."

1. Garner contends that the trial court erred by finding an issue of fact regarding whether it breached a duty to notify the excess carrier on behalf of AGL

---

[1] *Barrett v. Nat. Union Fire Ins. Co. &c.*, 304 Ga. App. 314 (696 SE2d 326) (2010).

because it owed no such duty. After examining Georgia law regarding duties owed to additional insureds by an insurance producer, we agree.

The Barretts point to no case law in Georgia, or from any other jurisdiction, directly addressing the scope of any duty owed by an insurance producer to notify an excess insurance carrier on behalf of an additional insured. In support of their claim, they rely upon their expert's affidavit asserting that such a duty existed under the particular facts of this case and the law regarding the voluntary assumption of a duty generally. While there is no Georgia law addressing this particular issue, Garner relies upon an analogous case addressing whether an insurance agent may be liable to an additional insured for failing to procure a policy. See *Workman v. McNeal Agency*, 217 Ga. App. 686 (458 SE2d 707) (1995).

In *Workman*, we held that an additional insured could not assert claims for breach of contract and negligence when an insurance agent did not procure insurance continuing her coverage on the property leased by the named insured and client of the insurance agency. Id. We reasoned that because the defendant "was not [the plaintiff]'s insurance agent, it had no duty to obtain insurance for her property, list her as an additional named insured, or to advise her that it had not done so." Id. at 688 (2). We conclude that this reasoning should also apply to a claim that an insurance

6

producer owes a duty to notify an excess carrier on behalf of an additional insured based solely upon its status as an additional insured under the policy. We find no merit in the Barretts' claim that their expert's affidavit can create a genuine issue of material fact as to whether a legal duty was owed. "The existence of a legal duty is a question of law for the court." (Citation omitted.) *Rasnick v. Krishna Hospitality*, 289 Ga. 565, 567 (713 SE2d 835) (2011). Therefore, an expert "affidavit does not, and cannot, create a legal duty where none existed before." *McGarrah v. Posig*, 280 Ga. App. 808, 811 (635 SE2d 219) (2006).[2]

We recognize, however, that in certain cases, a duty that might not otherwise exist can be created through a voluntary undertaking. See, e. g., *Huggins v. Aetna Cas. & Surety Co*, 245 Ga. 248, 249 (264 SE2d 191) (1980). Under Section 324A of the Restatement (Second) of Torts:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise

[2] The Supreme Court of Georgia's opinion in *Layfield v. DOT*, 280 Ga. 848, (632 SE2d 135) (2006), does not require a different result. In *Layfield*, the Supreme Court addressed whether an expert affidavit could create a genuine issue of fact with regard to *proximate cause*, not whether a legal duty was owed by the defendant. Id. at 849-852 (2).

7

reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

See also *Huggins*, supra. In this case, however, the record cannot support a conclusion that Garner undertook a duty to notify excess carriers on behalf of AGL. As requested by AGL, Garner notified the insurance carrier of the policy identified in Strickland's letter. While Strickland may have subjectively believed that AGL would also notify the excess insurance carrier, this belief was not communicated to Garner. And no prior conduct by Garner could have created a reasonable expectation that it would do so, because Strickland had never dealt with Garner on any claim before. At most, the record shows that Garner undertook a duty to notify the general liability insurance carrier, a duty which it performed without negligence. See *Guideone Mut. Ins. Co. v. Hunter*, 286 Ga. App. 852, 855 (650 SE2d 424) (2007) (insurer did not assume duty to advise homeowner on necessary extent of repairs based upon its inspection of property to determine the amount owed under the policy for a loss).

Because the trial court erred by concluding that a genuine issue of material fact exists as to whether Garner breached a duty to notify the excess insurance carrier, we reverse.

*Judgment reversed. Doyle, P. J. and Andrews, P. J., concur*.